[Civil No. 1360.    Filed January 2, 1914.]

[137 Pac. 544.]

STATE, on the Relation of GEORGE PURDY BULLARD, Attorney General Plaintiff, v. F. A. JONES, Defendant.

1. COURTS—SUPREME COURT—ORIGINAL JURISDICTION.—Under Constitution, article 6, section 4, giving the supreme court original jurisdiction in *habeas corpus, quo warranto,* and *mandamus* as to all state officers, and section 6 giving superior courts original jurisdiction in all cases and proceedings in which jurisdiction has not been by law vested exclusively in some other court and

specifically giving such courts and the judges thereof power to issue writs of *mandamus, quo warranto,* review, *certiorari,* and prohibition, the supreme court's jurisdiction in the cases mentioned in section 4 is not exclusive, and the superior courts have concurrent jurisdiction.

2. COURTS—SUPREME COURT—ORIGINAL JURISDICTION.—Under Constitution, article 6, section 4, giving the supreme court original jurisdiction in *habeas corpus, quo warranto,* and *mandamus* as to all state officers, and section 6 giving superior courts original jurisdiction in all cases and proceedings in which jurisdiction has not been by law vested exclusively in some other court, if act of April 1, 1913 (Laws 1913, c. 37), providing that an action may be brought by the attorney general in the supreme court where by the Constitution that court has jurisdiction or otherwise in the superior court against any person, association, or corporation, who usurps, intrudes into or unlawfully holds or exercises any public office or franchise, was intended to make the supreme court's jurisdiction, where it has jurisdiction, exclusive, it is invalid.

3. COURTS—SUPREME COURT—ORIGINAL JURISDICTION.—In cases such as *quo warranto* against state officers, in which the superior and supreme courts have concurrent jurisdiction, the supreme court will decline to take original jurisdiction unless the complaint shows special reasons why it should do so, and the complaint may be filed only after obtaining leave of that court.

4. OFFICERS—DISQUALIFICATION—STATUTORY PROVISIONS—"PUBLIC SERVICE CORPORATION."—Laws of 1912, chapter 90, section 1, provides that such act applies to public service corporations therein described. Section 2 declares every common carrier, pipe-line, gas, electrical, telephone, and telegraph corporation, and every wharfinger and warehouseman to be a public service corporation and subject to the jurisdiction, control, and regulation of the corporation commission. Section 7 provides that no person in the employ of or holding any official relation to any corporation or person subject in whole or in p..rt to regulation by the commission, and no person owning stock or bonds or pecuniarily interested in any such corporation, shall hold the office of commissioner, and that any person becoming the owner of stocks or bonds or becoming pecuniarily interested otherwise than voluntarily shall within a reasonable time divest himself of such ownership or interest, failing to do which his office shall become vacant. Section 31 gives the commission power and jurisdiction to supervise and regulate every public service corporation and to do all things necessary and convenient in the exercise of such power and jurisdiction. *Held,* that the inhibition of section 7 against a commissioner owning stock or bonds or being interested pecuniarily in a corporation relates only to public service corporations, which the commission

is given power to supervise and regulate; and hence the owner-
ship of stock in a holding corporation holding all the stock of two
insurance companies did not disqualify a commissioner or render
his office vacant.

5. OFFICERS—DISQUALIFICATION—STATUTORY PROVISIONS.—Constitution,.
article 14, section 8, providing that no domestic or foreign cor-
poration shall do business in the state without filing its articles
of incorporation or a certified copy thereof with the corporation
commission, section 17 providing that all domestic and foreign
corporations shall make reports to the corporation commission of
the status and business or condition of such corporation as may
be prescribed by law, and article 15, section 4, providing that the
corporation commission shall have the power to inspect and inves-
tigate the property, books, papers, business methods, and affairs,
of any corporation whose stock shall be for sale to the public,.
do not make corporations other than public service corporations,
subject in whole or in part to regulation by the commission within
the meaning of Laws of 1912, chapter 90, section 7, prohibiting
commissioners owning stocks or bonds of any corporation subject,
in whole or in part to regulation by the commission.

6. CONSTITUTIONAL LAW—SELF-EXECUTING PROVISIONS.—Constitution,.
article 14, section 16, providing that the records, books, and files
of all public service corporations, state banks, building and loan.
associations, trusts, insurance, and guaranty companies shall be
liable and subject to the full visitorial and inquisitorial powers of
the state, is not self-executing, as it does not confer such visitorial
and inquisitorial powers on any particular person or body.

7. OFFICERS — DISQUALIFICATION — STATUTORY PROVISIONS — "PECUNI-
ARILY INTERESTED."—Laws of 1912, chapter 90, section 7, provid-
ing that no person owning stocks or bonds of any corporation sub-
ject in whole or in part to regulation by the commission or
pecuniarily interested therein shall be appointed to the office of
commissioner and that any such person becoming such owner or
so interested shall within a reasonable time divest himself of such
ownership or interest, failing to do which his office shall become
vacant, does not apply to the ownership of stocks or bonds in in-
surance companies, though by Laws of 1913, chapter 94, such com-
panies are made subject to the regulation and supervision of the
corporation commission, especially as a policy-holder would be
"pecuniarily interested," while section 1 of chapter 94 provides
that no member of the commission shall be directly or indirectly
interested in any insurance corporation "except as an ordinary
policy-holder."

8. OFFICERS—DISQUALIFICATION—STATUTORY PROVISIONS.—Under Laws
of 1913, chapter 94, relative to the regulation and supervision of
insurance companies by the corporation commission, section 1 of

which provides that no member of the commission shall be directly or indirectly interested in any insurance corporation except as an ordinary policy-holder, the ownership of stock in an insurance corporation by a commissioner does not *ipso facto* cause a vacancy in his office justifying the court in *quo warranto* declaring the office vacant, since the statute prescribes no such penalty.

[As to validity of statute prohibiting public officers from entering employ of corporations, see note in Ann. Cas. 1912C, 1067.]

Original proceeding in *quo warranto* by the state, on relation of George Purdy Bullard, Attorney General, against F. A. Jones. Demurrer to the complaint sustained, and complaint dismissed.

The facts are stated in the opinion.

Mr. G. P. Bullard, Attorney General, Mr. Leslie C. Hardy, Assistant Attorney General, and Mr. William M. Seabury, for Plaintiff.

Messrs. Stoneman & Ling, for Defendant.

ROSS, J.—This is a proceeding in the nature of *quo warranto* and has for its purpose the ousting of defendant from the office of corporation commissioner of the state of Arizona. The proceeding was instituted by the attorney general, who "complains of the defendant, upon the verified complaint of Harry A. Davis, a citizen and duly qualified elector of the state of Arizona."

The charge laid against defendant Jones, briefly stated, is as follows: That on or about February 18, 1911, he became the owner by purchase, paying therefor $750. of 50 shares of the capital stock of the Merchants and Insurers' Reporting Company and ever since has been and now is such owner of said 50 shares, upon which he has received dividends or been credited upon the books of the company with dividends. That said Merchants and Insurers' Reporting Company is a California corporation and is the holding company of all the capital stock, consisting of 2,000 shares, par value per share of $100, of the Bankers' Fire Insurance Company and all of the capital stock, consisting of 1,000 shares, par value $100 each, of the Phoenix Fire Underwriters, except four shares of each of said last-mentioned companies. The last two cor-

porations are Arizona companies and were organized on or about December 3, 1909. That the stock of said two corporations constitutes approximately all of the assets of the Merchants and Insurers' Reporting Company, and that the profits derived from the business of said two insurance companies constitutes the only source of revenue of said Merchants and Insurers' Reporting Company and are paid to the latter for the benefit of its stockholders. That in February or March, 1912, defendant Jones became and continuously thereafter remained, until on or about April 6, 1913, the president and a director and stockholder of said Bankers' Fire Insurance Company and Phoenix Fire Underwriters. That on or about June 16, 1913, defendant was duly appointed by the Merchants & Insurers' Reporting Company its true and lawful attorney with full power and authority to perform every act and thing which it could do, and that after said date the defendant assumed to and did act for and on behalf of said company and by reason thereof was in the employ and held an official relation to said company. That on or about October 4, 1913, the corporation commission, the defendant acting as a member thereof, made an order directing the Bankers' Fire Insurance Company and Phoenix Fire Underwriters to submit to it all their records, books, files, notes, accounts, and vouchers, wherever kept, relating to the business of the company, for audit, examination, and investigation, until and including October 16, 1913. That on the last-mentioned date the corporation commissioners, defendant acting therein, made an order refusing an extension of time to said corporations in which to submit their reports as required by the order of October 4, 1913. That on October 16, 1913, defendant voluntarily disqualified himself from acting in his capacity as a corporation commissioner in the investigation of the affairs of said insurance companies and demanded that his appearance be entered in said proceeding as representing his own interests as a stockholder in the Merchants and Insurers' Reporting Company. That said Merchants and Insurers' Reporting Company, Bankers' Fire Insurance Company and Phoenix Fire Underwriters were severally, since May 28, 1912, subject in whole or in part to regulation by the corporation commission, and that defendant has owned and still owns stock in the said Merchants and Insurers' Reporting Com-

pany and is pecuniarily interested therein. That defendant accepted employment of the Bankers' Fire Insurance Company and Phoenix Fire Underwriters and was the president of each and a director therein and a stockholder thereof until April 6, 1913, and that he is still pecuniarily interested in said corporations. In consequence of which it is alleged that the defendant has violated the provisions of section 7 of chapter 90 of Laws of 1912 of the state of Arizona, and that by reason thereof has disqualified himself from holding the office of corporation commissioner and asks that he be ousted therefrom and his office declared vacant. In short, the defendant corporation commissioner is charged with being pecuniarily interested in, and in the employ of, and holding an official relation to the three named insurance companies; said companies being subject in whole or in part to regulation by the corporation commission.

Before taking up the case on its merits, we wish to say that, upon the considerations hereinafter set forth, we hesitated to take jurisdiction for any purpose. Upon reflection, it occurred to us that by taking jurisdiction we would be enabled to state the attitude of this court and the law governing its actions when invoked to take original jurisdiction in this and like proceedings.

Section 4, article 6, of the Constitution, invests this court with original jurisdiction in *habeas corpus, quo warranto,* and *mandamus* as to all state officers. Section 6, Id., invests the superior courts with original jurisdiction in all cases and proceedings in which jurisdiction has not been by law vested exclusively in some other court and specifically vests the superior courts and judges thereof with power to issue writs of *mandamus, quo warranto,* review, *certiorari,* and prohibition. Under similar constitutional provisions it has been held in Washington and New Mexico that the supreme court and the superior courts have concurrent original jurisdiction of proceedings in *mandamus, quo warranto,* and *habeas corpus* as to state officers. *Jones* v. *Reed,* 3 Wash. 57, 27 Pac. 1067; *State ex rel. Owens* v. *Van Stone,* 17 N. M. 41, 121 Pac. 611. The grant of original jurisdiction by the Constitution to the supreme court of such proceedings is not exclusive. "On the other hand," as was said in the last case cited above, "the grant of original jurisdiction to the district courts (superior

courts) is general and comprehensive and extends to every kind and form of controversy not excepted in the Constitution, and includes specifically *quo warranto.*" Under the Constitution this court has "original and exclusive jurisdiction" in but one case, and that is in "causes between counties concerning disputed boundaries and surveys thereof, or concerning claims of one county against another. Such trials shall be to the court without a jury." Sec. 4, art. 6, Constitution.

In section 1, chapter 8, Civil and Criminal Procedure, title "Quo Warranto," it is provided: "An action may be brought by the attorney general in the name of the state upon his relation, upon his own information, or upon the verified complaint of any person, in the supreme court, in cases where, by the Constitution of this state, that court has jurisdiction, or otherwise in the superior court of the county having jurisdiction against any person, association or corporation, who usurps, intrudes into or who unlawfully holds or exercises any public office or any franchise within this state, and he shall bring such action whenever he has reason to believe that any such office or franchise is being usurped, intruded into or unlawfully held or exercised." S. B. No. 127 (chapter 37), Second Special Session of Legislature of Arizona, approved April 1, 1913, not yet officially published [Rev. Stats. Ariz. 1913, sec. 1596]. If it was the purpose of the legislature by this section to make the jurisdiction of the supreme court exclusive where by the Constitution it has jurisdiction concurrent with the superior court, as in *quo warranto,* it exceeded its power. The attorney general may institute such proceeding in either court, as no act of the legislature can make the jurisdiction of either exclusive nor limit the right to proceed in either.

While by the Constitution the supreme court is given original jurisdiction in certain named cases, it is essentially an appellate court, a court of last resort and not of first resort. That the superior courts have been given concurrent jurisdiction in all these matters (except the one case mentioned above) is very persuasive that its purpose in so doing was to afford the litigant an opportunity to bring his action first in a court essentially one of original jurisdiction, where provision is made by law for a full and complete trial, where a jury may be had, if demanded, and issues tried upon oral

testimony—a court in the immediate vicinage of the litigants,. fully equipped for a complete exercise of its jurisdiction. The justice and propriety of such an arrangement is recognized by all of the Constitutions of the Union; the theory and practice being that a litigant dissatisfied with the action of the court of first instance may appeal to the supreme court,. "a court disassociated from all connection with the actual trial and having the time, means, and opportunity for mature consideration of the same."

Section 23, article 2, Constitution, provides that "the right of trial by jury shall remain inviolate. . . . "

Bailey on Habeas Corpus, section 328, volume 2, page 1277, says: "At common law quite generally, issues of fact arising in *quo warranto* proceedings were triable by jury whether commenced in the supreme court under its jurisdiction or in a subordinate court. The supreme court may impanel a jury or send the issue to a subordinate court, there to be heard before a jury; the order directing the evidence and proceedings be returned to the superior court for final determination. The issues in such an action are legal issues, and the codes or statutes of the states have, as quite generally held, made no change in this respect, and hence the right of trial by jury is a matter of right, guaranteed by the Constitutions of the several states."

This question is not before us, and we only suggest it to enforce the reason for first beginning the action in the trial court. Bearing on this point, we quote from *State* v. *Van Stone, supra,* at page 613 of 121 Pac.: "Another consideration advanced in cases of this kind by many courts is 'that a court of last resort should not entertain the jurisdiction unless the case is *publici juris;* that is, a case which affects the sovereignty of the state, its franchises or prerogatives, or the liberties of its people. Indeed, this doctrine has been so far extended in some of the states as to amount to a positive limitation upon the jurisdiction. It is said in some of those cases that, while the grant of jurisdiction is in general terms, the jurisdiction is not a general jurisdiction in all cases, but by reason of the nature of a court of last resort, and its proper place in the structure of the state government, the jurisdiction is limited to questions in which the state at large is interested as to its prerogatives or franchises or the liberties of

its people. In other cases an exception is ingrafted upon this limitation in favor of the jurisdiction in cases of great emergency, or where a refusal to entertain the jurisdiction would amount to a denial of justice. *Homesteaders* v. *McCombs,* 24 Okl. 201, 20 Ann. Cas. 181, 38 L. R. A., N. S., 1000, 103 Pac. 691; *State* v. *Cobb,* 24 Okl. 662, 24 L. R. A., N. S., 639, 104 Pac. 361; *People* v. *District Court,* 37 Colo. 443, 13 L. R. A., N. S., 768, 86 Pac. 87, 92 Pac. 958; *People* v. *Chicago,* 193 Ill. 507, 58 L. R. A. 833, 62 N. E. 179.''

In cases in which the superior courts have concurrent jurisdiction with this court, we shall decline to take original jurisdiction, unless the complaint shows special reasons why we should do so, and the complaint may be filed only after first obtaining leave of this court. Aside from other considerations, the volume of appellate business in this court would seem to require such a rule.

It is the contention of defendant, and he raises the point by demurrer, that the provisions of section 7 of chapter 90, Laws of 1912, have no application to the state of facts disclosed by the complaint. Section 7 reads as follows: ''Each commissioner and each person appointed to a civil executive office of the commission shall, before entering upon the duties of his office, take and subscribe the constitutional oath of office. Each commissioner shall be a qualified elector of this state, and no person in the employ of or holding any official relation to any corporation or person, which said corporation or person is subject in whole or in part to regulation by the commission, and no person owning stocks or bonds of any such corporation or who is in any manner pecuniarily interested therein shall be appointed to or hold the office of commissioner or be appointed or employed by the commission: Provided, that if any such person shall become the owner of such stocks, or bonds, or become pecuniarily interested in such corporation otherwise than voluntarily, he shall within a reasonable time divest himself of such ownership or interest; failing to do so, his office or employment shall become vacant.''

In order to find out the correct and full meaning of this section, it is essential that it be read in connection with all the other provisions of chapter 90. This chapter is a long one, consisting of 87 sections, of which section 7 is only a

small part. The title of the chapter is "An act relating to public service corporations, providing for the regulation of the same, fixing penalties for the violation thereof, and repealing certain acts; with an emergency clause." This title makes no reference to the corporation commission, its organization, powers, or duties, although these matters are treated of in the body of the law. The first section of the chapter reads as follows: "This act shall be known as the 'Public Service Corporation Act,' and shall apply to the public service corporations herein described and to the commission herein referred to." Section 2 defines certain words and phrases in common use in connection with public utilities and particularly names and declares "every common carrier, pipeline corporation, gas corporation, electrical corporation, telephone corporation, telegraph corporation, wharfinger and warehouseman, . . . to be a public service corporation and to be subject to the jurisdiction, control and regulation of the commission and to the provisions of this act." Sections 3, 4, 5, and 6 provide for the election and filling vacancies in office of commissioners, for their legal adviser and necessary corps of assistants. Sections 8, 9, 10, 11, and 12 provide where and when the corporation commission may hold its meetings, for a quorum, for their salaries, and compensation of their employees and general expenses of the commission and reports of their transactions and proceedings to the governor, each fiscal year. None of the matters in sections 3 to 12, inclusive, is expressed in the title to chapter 90, and whether they are "properly connected" with the subject "expressed in the title" may be seriously questioned.

It may be that those provisions are repugnant to section 13, article 4, Constitution, reading as follows: "Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title"—but we deem it unnecessary to determine that question here.

The sections from 12 to 87 do relate to public service corporations and provide for the regulation of the same and fix penalties for violations of its provisions and fall clearly

within the title of the chapter and are properly related thereto.

The powers and jurisdiction of the corporation commission are expressly defined and limited by section 31, which is as follows: "The commission is hereby vested with power and jurisdiction to supervise and regulate every public service corporation in the state and to do all things, whether herein specifically designated or in addition thereto, which are necessary and convenient in the exercise of such power and jurisdiction."

Now, turning to section 7, and bearing in mind that chapter 90, of which it is a part, by its first section provides that it "shall be known as the 'Public Service Corporation Act,' and shall apply to public service corporations herein described," let us search for the meaning of those words and phrases in section 7 that prohibit a commissioner from holding any official relation to or being employed by or being pecuniarily interested in any corporation or person subject in whole or in part to regulation by the commission and providing that if such commissioner shall become the owner of stock or bonds, or become pecuniarily interested in such corporation otherwise than voluntarily, he shall within a reasonable time divest himself of such ownership or interest; failing to do so, his office shall become vacant. It is the contention of the plaintiff that this section 7 should have a literal interpretation, without regard to its relation to other parts of chapter 90. It is too clear for question that chapter 90 in general purport, meaning, and effect has for its object "public service corporations" and their regulation. Neither in the title of the chapter nor in its body is intimation made that its provisions should reach or affect the regulation of private corporations other than public utilities. That being true, is not the inhibition against a commissioner owning stock or bonds or being interested pecuniarily or as employee or otherwise in a "corporation" confined to "public service corporations"? That is, corporations of which the commission is given "power and jurisdiction to supervise and regulate," as provided in section 31, *supra.*

By the demurrer in this case it is admitted that defendant Jones on February 18, 1911, at a time long prior to his election and qualification as a commissioner, bought, paying

XV Ariz.—15

therefor $750, stock of the Merchants and Insurers' Reporting Company; that he owned such stock when inducted into office February 14, 1912, and still owned it at the institution of this proceeding. The Merchants and Insurers' Reporting Company is not a "public service corporation" and does not fall within the purview of either the title or the body of chapter 90, and therefore he is not subject to the penalty therein prescribed for one owning stock of a public service corporation.

The Constitution, sections 2 to 19, article 15, expressly confers jurisdiction upon the corporation commission to supervise and regulate public service corporations, but its plenary power in that respect is not extended by that instrument to corporations other than public utilities.

Section 8, article 14, Constitution, provides that "no domestic or foreign corporation shall do any business in this state without having filed its articles of incorporation or a certified copy thereof with the corporation commission. . . . "

Section 17 provides that all domestic and foreign corporations shall pay to the state such fees and licenses as may be provided by law, and make "reports to the corporation commission of the status, business, or condition of such corporation, as may be prescribed by law."

These two sections of the Constitution do not empower the corporation commission to regulate "in whole or in part" the corporations mentioned therein.

Section 4, article 15, Constitution, provides that the corporation commission "shall have the power to inspect and investigate the property, books, papers, business, methods, and affairs of any corporation whose stock shall be for sale to the public. . . . " The power "to inspect and investigate" the business of a corporation does not make it "subject in whole or in part to regulation by the commission."

Section 16, article 14, Constitution, provides that "the records, books, and files of all public service corporations, state banks, building and loan associations, trust, insurance, and guaranty companies shall be at all times liable and subject to the full visitorial and inquisitorial powers of the state. . . . "

The provisions of this section are not self-executing, for the reason that "the visitorial and inquisitorial powers"

mentioned are not conferred on any particular person or body. Legislation in aid of this section and section 4, *supra,* in order to make their provisions effective, was necessary. Chapter 48, Laws of 1912 (First Session, First Legislature), approved May 16, 1912, accordingly authorizes and empowers "the corporation commission to regulate and supervise the business of all persons, copartnerships, associations, organizations or corporations doing, transacting or soliciting" business as home co-operating companies, or of issuing contracts or agreements in the nature of bonds, debentures, certificates, or otherwise, except insurance and some other corporations.

Chapter 69, Laws of 1912 (First Session), approved May 18, 1912 (Blue-Sky Law), provides for the regulation and supervision of investment companies by the corporation commission. Chapter 50, Laws of 1912 (Second Session), approved June 19, 1912, confers a like power in the corporation commission over surety companies.

There has been no specific legislation for the regulation of insurance companies, so far as we can discover, except chapter 94, Laws of 1913, passed by the Third Special Session of the Legislature on May 13, 1913, to take effect October 1, 1913. The enacting clause of this chapter is "An act to provide for the supervision and regulation of insurance companies and to regulate the transaction of insurance in the state of Arizona." There are 111 sections of this chapter devoted to prescribing regulations and methods of supervision of insurance companies by the corporation commission. Section 1 thereof contains this very significant provision: "No member of the corporation commission nor any employee of said commission shall be directly or indirectly interested in any insurance corporation, except as an ordinary policy-holder."

Not until October 1, 1913, were insurance companies "subject to regulation in whole or in part" by the corporation commission, and not until then was there any inhibition against a commissioner owning stock or bonds, or being pecuniarily interested in, or in the employ of or holding an official relation to, an insurance corporation. That section 7 of chapter 90 has no application to the state of facts in this case is clearly shown, for, if it does apply, then it prohibits

a commissioner from being a policy-holder in insurance companies, for it expressly prohibits any person from being appointed to or holding the office of commissioner "who is in any manner pecuniarily interested" in a corporation "subject to regulation in whole or in part by the commission." A policy-holder of an insurance company would certainly be "pecuniarily interested" therein. To prohibit the commissioners or their employees from being policy-holders of insurance companies, as would result if we hold the provisions of section 7 of chapter 90 apply here, would lead to absurd results, and accord with "neither rime nor reason."

The legislature evidently took the view that section 7 of chapter 90 had no application to a state of facts as here appear, for in section 1, chapter 94, *supra*, it prohibited the commissioners and their employees from being interested in any insurance company, except as a policy-holder.

Since October 1, 1913, the date that chapter 94 became effective, it is shown by the complaint that defendant Jones had owned stock in an insurance company subject to regulation by the corporation commission. In doing this he is standing in the face of section 1 of said chapter. The penalty prescribed in section 7 of chapter 90, as we have seen, does not apply, for by its terms it is restricted to a prohibition of commissioners being interested in public service corporations "subject to regulation in whole or in part by the commission." Chapter 94 does not provide that interest in an insurance company by a commissioner shall *ipso facto* cause a vacancy in his office. Indeed, that chapter fails to prescribe any penalty for such violation of its provisions by a commissioner.

If, in other parts of the law, there are penalties for such conduct, they may not be inflicted in this proceeding. We are asked to declare defendant's office vacant, which we cannot do, as the law fails to prescribe that penalty upon the facts in this case.

Demurrer sustained, and complaint dismissed.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.