[Civil No. 3279. Filed June 13, 1933.]

[22 Pac. (2d) 845.]

WIN WYLIE, Appellant, v. PHOENIX ASSUR-
ANCE COMPANY, LTD., a Corporation, and
INSURANCE COMPANY OF NORTH AMER-
ICA, a Corporation, Appellees.

Mr. Samuel White, for Appellant.

Messrs. Frazier & Perry, for Appellees.

ROSS, C. J.—The appellees, Phoenix Assurance
Company, Ltd., and Insurance Company of North
America, each issued a policy to William J. and
Adah M. Fellows upon their dwelling-house, with
mortgagee clause attached thereto, conditioned that

loss, if any, was payable to the appellant-mortgagee as his interests might appear. The mortgagors having defaulted in their payments, the appellant, on February 13, 1932, commenced proceedings of foreclosure. On March 7, 1932, the insured property was damaged by fire to the extent of $6,000. On May 2, 1932, the appellant filed an amended complaint in which he made the two insurance companies defendants and prayed for judgment against them. The latter answered, setting up as a defense that the mortgagee had commenced an action on February 13, 1932, to foreclose his mortgage against the insured property and had not notified the defendants of such proceeding, and that by reason of such failure to notify them his rights as mortgagee were terminated. This defense is predicated upon the terms of the mortgagee clauses attached to policies reading as follows:

"2. Any mortgagee . . . who shall have or acquire knowledge of the commencement of any foreclosure proceedings, or of any notice of sale of any of said property under any mortgage . . . shall forthwith notify this Company thereof and, (if the same be not permitted by this policy) shall cause the consent of the Company thereto to be noted thereon; and in the event of failure so to do, all rights, of such mortgagee hereunder shall forthwith terminate. The mortgagee hereby covenants and agrees on demand to pay the premium for said increased hazard for the term of the use thereof."

It is agreed that this clause "is not a part of the New York Standard form of mortgagee clause but is a part of the form adopted and prescribed by the Arizona Corporation Commission for use by insurance companies operating in Arizona." It is also agreed that the mortgagee gave the insurance companies no notice of the commencement of foreclosure proceedings. On the pleadings and stipulations, the

court entered judgment against the mortgagee, who has appealed upon the sole question of the power and right of the corporation commission to adopt and prescribe the above mortgagee clause.

The power of the legislature to require all fire insurance policies issued in this state to be in the form known as the "New York Standard" has been recognized and approved by this court. *Scottish Union & Nat. Ins. Co.* v. *Phoenix Title & Trust Co.*, 28 Ariz. 22, 235 Pac. 137. The statute we considered in that case was paragraph 3440 of the Civil Code of 1913, the pertinent part of which reads as follows:

"No fire insurance company shall issue any fire insurance policy covering any property or interest therein in this state other than on the form known as the 'New York Standard' as now or may hereafter be constituted"—and it was held to be a valid and constitutional law except as to the phrase "as now or may hereafter be constituted." This phrase was held unconstitutional for the obvious reason that it was an attempt by the legislature to delegate to another authority or body its powers to make laws. In the Code revision of 1928 the wording of said paragraph 3440, above quoted, was changed to read as follows (section 1826):

"No fire insurance company shall issue any fire insurance policy covering any property or interest therein in this state other than on the form known as the 'New York Standard' with such changes and indorsements as the corporation commission may prescribe."

It is apparent that the only difference in paragraph 3440 and section 1826 is that the former undertakes to delegate to the New York legislature and the latter to the Arizona corporation commission legislative powers.

The prescribing of the forms of insurance policies to be used in the state is in its nature legislative and is not delegable to any body or authority. Such has been the holding of all courts that have had the question before them. *King* v. *Concordia Fire Ins. Co.,* 140 Mich. 258, 103 N. W. 616, 6 Ann. Cas. 87; *Anderson* v. *Manchester Fire Assurance Co.,* 59 Minn. 182, 60 N. W. 1095, 63 N. W. 241, 50 Am. St. Rep. 400, 28 L. R. A. 609; *O'Neil* v. *American Fire Ins. Co.,* 166 Pa. 72, 30 Atl. 943, 45 Am. St. Rep. 650, 26 L. R. A. 715; *Dowling* v. *Lancashire Ins. Co.,* 92 Wis. 63, 65 N. W. 738, 31 L. R. A. 112; *Phenix Ins. Co.* v. *Perkins,* 19 S. D. 59, 101 N. W. 1110.

The text in Couch's Cyclopedia of Insurance Law, volume 1, page 96, section 72, reads:

"However, the form of the policy, if absolute adherence is required, must be a legislative enactment, since a delegation of power to a commission or other nonlegislative body or administrative officer is unconstitutional as conferring legislative powers."

Appellees admit the correctness of the rule as stated above but contend that the legislature of this state is authorized by the state Constitution to delegate to the corporation commission the power to change the form of the New York standard policy, or the indorsements thereon, as the commission may see fit; and this is the crux of the case.

The corporation commission is provided for by article 15 of the state Constitution. It is given very broad powers over public service corporations. Sections 1, 2, 3. Its jurisdiction over corporations other than public service is limited by section 4 of said article to the "power to inspect and investigate the property, books, papers, business, methods, and affairs of any corporation whose stock shall be offered for sale to the public"; and by section 5 it is given sole power to issue certificates of incorpora-

tion to domestic companies and licenses to foreign corporations to do business in this state, under such terms as the law may prescribe. The only powers conferred upon the corporation commission over corporations other than public utility are found in these two sections and these powers pertain to the right to investigate them when they are offering for sale to the public their stock, and to their qualifications to do business in the state.

Section 6 of article 15, the one appellees contend authorizes the legislature to delegate its powers to prescribe changes in the form of insurance policies to the corporation commission, reads as follows:

"The law-making power may enlarge the powers and extend the duties of the Corporation Commission, and may prescribe rules and regulations to govern proceedings instituted by and before it; but, until such rules and regulations are provided by law, the Commission may make rules and regulations to govern such proceedings."

In *Van Dyke* v. *Geary*, 244 U. S. 39, 37 Sup. Ct. 483, 61 L. Ed. 973, it was held that the corporation commission, having been authorized by the legislature to do so, could fix the rates and charges for water furnished the public by an individually-owned water system, although article 15 of the Constitution named, as subject to the commission's jurisdiction, only utilities owned by corporations or public service corporations. This ruling was based upon the grounds: (1) That the legislation as authorized under section 6, *supra*, enlarged and extended the commission's power over individually-owned water systems, and (2) that the term "public service corporations," as shown by the Constitution, should be interpreted in the broad popular sense as embracing all public utilities, whether owned by individuals or corporations. The court said:

"The character of the service, that is, whether it is public or private, and not the character of the ownership, determines ordinarily the scope of the power of regulation."

In *Haddad* v. *State,* 23 Ariz. 105, 201 Pac. 847, the same questions were raised and were disposed of in accordance with the opinion in the Van Dyke case. We also held that regulations fixing the rates and charges of carriers for hire, promulgated by the corporation commission under a grant of legislative authority, were valid.

In both cases the enlarged or extended delegation of power to the corporation commission was over public service corporations or public utilities; in one case the furnishing of water to the public, and in the other the regulation of common carriers or carriers for hire over the public highways of the state. These cases are authority for legislation enlarging and extending the powers of the corporation commission over public service corporations beyond those expressly given by the Constitution when in aid of the general policy of the state as expressed in the fundamental law. But do they lend any support to appellees' contentions? The authority to change the form of an insurance policy and the indorsements thereon is not related to the inquisitorial powers of the commission over private corporations as given in section 4 of article 15, or its power to issue certificates of incorporation to domestic companies or licenses to foreign corporations as found in section 5 thereof; and is not in furtherance of any power given the corporation commission over private corporations by article 15.

Article 15 of the Constitution does not, in terms, confer on the corporation commission power to regulate the business of insurance like it does the business of public service corporations. The commission's

power to regulate the insurance business, except to the limited extent indicated in sections 4 and 5 of said article, is statutory, chapter '36, Revised Code of 1928 (section 1773 et seq.), and receives its sanction under the police power of the state. *German Alliance Ins. Co.* v. *Lewis,* 233 U. S. 389, 34 Sup. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C 1189; *Insurance Co. of North America* v. *Welch,* 49 Okl. 620, 154 Pac. 48, Ann. Cas. 1918E 471.

Article 15 confers very full and complete power on the corporation commission over public service corporations—powers formerly exercised by the legislature, such as fixing rates and charges for services, forms of contracts, sanitary conditions, etc., and it is these powers and duties of public utilities "the law-making power may enlarge . . . and extend." The legislature cannot under this enabling phrase delegate to the commission the new and independent power of making laws.

We cannot think section 6, *supra,* gives authority to the legislature to delegate its power to enact laws prescribing changes in the form of insurance policies and indorsements thereon to the corporation commission. If the commission possesses that power, it means it may alter the New York standard form until it is no longer recognizable. Under the pretext of changing the New York standard form it can legislate a policy with entirely different terms and conditions. As said in *Dowling* v. *Lancashire Ins. Co., supra,* in speaking of an attempt by the legislature to invest the insurance commissioner of the state with the power to prescribe the forms of insurance policies:

"Within the lines indicated, a discretion was reposed in the commissioner as to the form of the policy which embodied the substance of the contract, and which was to have the sanction and force of law. The effect, clearly, was to transfer to him bodily the

legislative power of the state on that subject. . . . It was not to be published, as laws are required to be, or to be approved by the governor. It was to be filed in the office of the insurance commissioner, instead of being deposited in the office of the secretary of state, and its use was to be enforced by the penal sanction of the act. He was not required by the act to perform any mere administrative or executive duty, or to determine any matter of fact for the purpose of executing or carrying the act into effect.

"The result of all the cases on this subject is that a law must be complete, in all its terms and provisions, when it leaves the legislative branch of the government, and nothing must be left to the judgment of the electors or other appointee or delegate of the legislature, so that, in form and substance, it is a law, in all its details, *in praesenti*, but which may be left to take effect *in futuro*, if necessary, upon the ascertainment of any prescribed fact or event. . . . For these reasons, we hold that the provision authorizing the insurance commissioner to prepare, approve, and adopt a printed form, in blank, of a contract or policy of fire insurance, together with such provisions, agreements, or conditions as may be indorsed thereon or added thereto, and form a part of such contract or policy, and that such form shall, as near as the same can be made applicable, conform to the type and form of the New York standard fire insurance policy, so called and known, is unconstitutional and void."

If the mortgagee clause attached to the insurance policies herein is legislation, and that is what it is if anything, we have this anomalous situation: A law that has never received the approval of the legislature, or of the Governor of the state, and that has never been filed with the secretary of state, as all laws under the Constitution must be.

We have come to the conclusion that the provision in the mortgagee clause attached to the policies requiring the mortgagee to give notice to the insurance

companies of the bringing of the suit to foreclose the mortgage is void and without legal effect.

The judgment of the lower court is reversed and the cause remanded, with directions that further proceedings be had in accordance herewith.

LOCKWOOD and McALISTER, JJ., concur.