760 P.2d 532

**ARIZONA PUBLIC SERVICE COMPA-NY, an Arizona corporation; and AZP Group, Inc., an Arizona corporation, Plaintiffs/Appellants,**

v.

**ARIZONA CORPORATION COMMISSION, Defendant/Appellee.**

No. CV–87–0420–PR.

Supreme Court of Arizona,
En Banc.

June 21, 1988.

Reconsideration Denied Sept. 27, 1988.

Snell & Wilmer by Steven M. Wheeler, and Martha E. Gibbs, Phoenix, for plaintiffs/appellants.

Timothy M. Hogan, Chief Counsel, Arizona Corp. Com'n, Phoenix, for defendant/appellee.

HOWARD, Judge.[1]

This case involves the power of the Arizona Corporation Commission to order a non-public service corporation to submit detailed monthly reports concerning its past business activities and future plans. We have jurisdiction pursuant to Ariz.Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## FACTS AND BACKGROUND

On March 15, 1985, Arizona Public Service Company (APS), the largest public utility in the State of Arizona, announced it would submit to its shareholders a plan for a major reorganization of its corporate structure. Under this plan, APS would become a wholly-owned subsidiary of AZP Group, Inc. (AZP). AZP would also become the holding company for Dorado Investment Company, Energy Development Company and Malapai Resources Company, which are subsidiaries of APS.

On April 29, 1985, the stockholders of APS approved the restructuring plan. Pursuant to the plan, the owners of APS common stock exchanged their shares for a like number of shares of AZP stock. As a result, AZP acquired all the common stock of APS. Initially, APS contributed over 99

---

1. Chief Justice Frank X. Gordon, Jr. did not participate in this decision; pursuant to Ariz. Const. art. 6 § 3, Judge Lawrence Howard, Court of Appeals, Division Two was designated to sit in his stead.

percent of the assets, revenues and earnings of AZP. All members of the AZP board of directors were also members of the APS board, the officers of AZP were also officers of APS, and AZP and APS share the same business office.

When the Arizona Corporation Commission (Commission) learned of the reorganization, it promulgated an "Initial Request for Background Information Regarding APS's Planned Corporate Restructuring," which consisted of several pages of questions concerning the reorganization. APS and AZP responded to the request in writing and sent their representative to an open meeting of the Commission at which the reorganization was discussed. Following this meeting, a second open meeting was held to deliberate the text and terms of a recommended order which would require monthly reports from APS and AZP. At the end of the meeting, the Commission voted to impose the reporting requirement and five days later issued Decision No. 54504.

Decision No. 54504 requires APS to make monthly reports about transactions between APS and AZP or its subsidiaries, including information about financing, products, service and personnel. Section V of the order also requires AZP to make similar reports concerning its transactions with its non-public service subsidiaries and to submit reports concerning its diversification activities and plans, all board resolutions and minutes reflecting those plans, as well as an analysis of the benefits and risks to AZP and its customers from such proposed ventures. AZP, under protest, complied with the order by filing approximately two pages of reports, and APS complied by filing approximately 30 pages of reports for the period from May 1985 through September 1985.

In the Decision, the Commission expressed concern over the formation of holding companies by public utilities. The Commission's primary concern was that its regulatory authority over public utility companies would be weakened and bypassed by the establishment of holding companies. To insure reliable utility service at fair and reasonable rates and to safeguard against such practices as the misuse of public utilities' assets or credit by a non-regulated affiliate, the Commission anticipated a formal adoption of rules and regulations addressing the restructuring and diversification of public service corporations and their holding companies.

APS and AZP filed an action in the Maricopa County Superior Court challenging the authority of the Commission to enter Decision No. 54504. They subsequently moved for summary judgment, which the superior court denied, entering summary judgment in favor of the Commission.

AZP and APS appealed to Division One of the Court of Appeals, contending that the Commission (1) lacked jurisdiction to impose reporting requirements on AZP; (2) impermissibly interfered with the internal management of both companies by requiring them to report strategic information concerning their business plans and activities; (3) lacked any factual or legal basis and failed to articulate its reasons for issuing the order; and (4) denied the companies procedural due process by issuing the order without according them notice and an opportunity to be heard.

The court of appeals affirmed the portion of Decision No. 54504 requiring reports from APS concerning its activities but reversed section V of the Decision, which required disclosure of information about AZP's plans and activities. The court held that it was beyond the constitutional jurisdiction of the Commission to require reports of this nature from a non-public service company. It added, however, that its holding was not intended to limit or define the Commission's power to investigate by subpoena or call witnesses during rate-making or rule-making proceedings.

The Commission petitioned for review, contending that the court of appeals erred in holding that the Commission was without jurisdiction to enact section V of Decision No. 54504.

## THE CONTENTIONS OF THE PARTIES

The Commission does not contend that AZP is a public service corporation so as to

subject it to the full panoply of Commission regulations contained in article 15 of the Arizona Constitution. It contends, however, that §§ 4 and 13 of article 15 give the Commission the authority to require reports from AZP. Article 15, § 4 states:

> The Corporation Commission, and the several members thereof, shall have power to inspect and investigate the property, books, papers, business, methods, and affairs *of any corporation whose stock shall be offered for sale to the public* and of any public service corporation doing business within the State, and for the purpose of the Commission, and of the several members thereof, shall have the power of a court of general jurisdiction to enforce the attendance of witnesses and the production of evidence by subpoena, attachment, and punishment, which said power shall extend throughout the State. Said Commission shall have power to take testimony under commission or deposition either within or without the State. (Emphasis added.)

Article 15, § 13 concerns reports to the Commission and states:

> All public service corporations and *corporations whose stock shall be offered for sale to the public* shall make such reports to the Corporation Commission, under oath, and provide such information concerning their acts and operations as may be required by law, or by the Corporation Commission. (Emphasis added.)

In addition to the constitutional provisions, the Commission also relies on A.R.S. § 40–202(A), which provides:

> The commission may supervise and regulate every public service corporation in the state and do all things, whether specifically designated in this title or in addition thereto, necessary and convenient in the exercise of such power and jurisdiction.

APS and AZP contend that (1) the only time the Commission has the power to require reports from a non-public service corporation is when it makes its offer of stock; (2) the constitutional provisions are not self-executing and the legislature has not passed any legislation authorizing the Com-

mission to require reports from a non-public service corporation; and (3) A.R.S. § 40–202(A) cannot be applied to require reports from a non-public service corporation.

## THE RIGHT TO REPORTS

■ *Wylie v. Phoenix Assurance Co.*, 42 Ariz. 133, 22 P.2d 845 (1933), is the basis for appellants' contention that the Commission can require reports from a non-public service corporation only in connection with its initial offering of stock. We believe this is a misreading of *Wylie*. In *Wylie* the issue was whether the Constitution gave the legislature the authority to delegate to the Corporation Commission the power to change the form of the New York standard insurance policy or the endorsements thereof, as the Commission might see fit. In dicta, the court stated:

> The corporation commission is provided for by article 15 of the state Constitution. It is given very broad powers over public service corporations. Sections 1, 2, 3. Its jurisdiction over corporations other than public service is limited by section 4 of said article to the "power to inspect and investigate the property, books, papers, business, methods, and affairs of any corporation whose stock shall be offered for sale to the public"; and by section 5 it is given sole power to issue certificates of incorporation to domestic companies and licenses to foreign corporations to do business in the state, under such terms as the law may prescribe. The only powers conferred upon the corporation commission over corporations other than public utility are found in these two sections *and these powers pertain to the right to investigate them when they are offering for sale to the public their stock*, and to their qualifications to do business in the state. (Emphasis added.) *Id.* at 136–37, 22 P.2d at 846.

We believe that the phrase "whose stock shall be offered for sale to the public" as used in §§ 4 and 13 of article 15 does not refer to an initial or subsequent offering of stock but rather is intended to distinguish

between publicly and privately held corporations. *Wylie* does not hold otherwise. Thus, the powers conferred upon the Commission to inspect and investigate under § 4 and to require reports under § 13 extend to all corporations which offer stock for sale to the public. They do not extend to those corporations which do not do so.

Our interpretation of §§ 4 and 13 and of *Wylie* is bolstered by the history of the Arizona Constitutional Convention of 1910 and by excerpts from the journals of the convention. These reveal a split between and within the political parties as to how much power the Corporation Commission would have. The progressive wing of the Democratic Party envisioned a powerful commission which would regulate all corporations. Aligned against this position were the Republicans and conservative Democrats, who believed that a powerful corporation commission would be ruinous to the industrial prosperity of Arizona and likely would put every small corporation in Arizona out of business.

> A powerful corporation commission was at the heart of the progressives' plan for the regulation of corporations. The commission was to be vested with the power to investigate the books of *all corporations* "notwithstanding the immunities and privileges in the Bill of Rights ... secured to the persons, inhabitants and citizens of the state." While the Goldwater delegates joined with the Hunt progressives to fend off a motion which would have destroyed the commission altogether, they refused to accede to such inquisitorial powers.
>
> The scope of the powers ultimately given the commission was not nearly so great as originally envisaged by the progressives.

Bakken, *The Arizona Constitutional Convention of 1910,* 1978 Ariz. St.L.J.1, 15 (emphasis added, footnotes omitted).

The journals of the Arizona Constitutional Convention contain the following minutes of a motion to amend § 13 of article 15 of the Constitution:

> Mr. Chairman: The amendment is carried.

Are there any other amendments to section 13?

> Mr. Parsons: Mr. Chairman, I desire to offer an amendment to line 1, section 13, which is section 12 of the printed copy. After the word "corporations" in the first line, to make this consistent with the amendment we adopted this morning, add, the words "and all corporations whose stock shall be offered for sale to the public."
>
> Mr. Chairman: Does the chair hear a second to that motion?
>
> Mr. Feeney: I second the motion.
>
> Mr. Chairman: The question is on the amendment offered by the gentleman from Cochise, Mr. Parsons, that after the word "corporations" in line 1, of section 13, the words "and all corporations whose stock shall be offered for sale to the public," be added. As many as favor this amendment say aye; as their names are called; contrary-minded no.
>
> Mr. Parsons: I desire simply to say that in section 4 we added the words: We gave the corporation commission the power to investigate the affairs of all such corporations. Now in section 13, where I desire the amendment placed, is simply requiring that *same class* of corporations to report to the commission, and it seems to me that it simply supplements what we did this morning, for the committee having the right to investigate them certainly ought to have the right to require reports from this *class* of corporations.
>
> Mr. Cunniff: Mr. Chairman, it seems to me that is simply carrying out what we did this morning. It is the logical thing to put in there.
>
> Mr. Chairman: The secretary will call the roll.
>
> Roll call showed 25 ayes and 22 nays.
>
> Mr. Chairman: The amendment is carried. (Emphasis added).

C. Cronin, Journals of the Constitutional Convention of Arizona, afternoon session, Dec. 8, 1910, at 631 (ed. 1925). It is evident from the foregoing that these sections were intended to apply to a class of corporations, in other words, publicly held corpo-

rations, and not simply to corporations at the time of their first public offering.

Sections 4 and 13 of article 15 represent a compromise between the previously mentioned factions.[2] Instead of giving power to the corporation commission to inspect and investigate all corporations and require reports from all corporations as the progressives desired, these sections gave the Commission this power only over publicly held corporations and public service corporations.

## IS SECTION 13 SELF–EXECUTING?

■ Relying on *State v. Jones*, 15 Ariz. 215, 137 P. 544 (1914), APS and AZP contend that the provisions of § 13 are not self-executing:

> One of the methods of determining whether a constitutional provision is self-executing is whether it merely lays down general principles or attempts to supply a sufficient method whereby the rights which it grants may operate without the aid of further legislative enactment. It follows that if a constitutional provision grants a right which can be put into operation without further legislative action, the provision is self-executing.

*Miller v. Wilson*, 59 Ariz. 403, 408, 129 P.2d 668, 670 (1942). In *State v. Jones*, the court was considering article 14, § 16 of the Constitution, which provides that "[t]he records, books, and files of all public service corporations, State banks, building and loan associations, trust, insurance, and guaranty companies shall be at all times liable and subject to the full visitorial and inquisitorial powers of the State...." 15 Ariz. at 226, 137 P. at 549. The court quite properly held that this section was not self-executing for the reason that "the visitorial and inquisitorial powers" mentioned are not conferred on any particular person or body.

APS and AZP contend that the court in *Jones* also held that article 15, § 4 was not self-executing, and therefore conclude that § 13 is likewise not self-executing. We disagree. The court in *Jones* merely held that the power to inspect and investigate was not the same as the power to regulate, and that legislation was necessary to confer upon the Commission the power to regulate a non-public service corporation. The court did not address the issue of whether the Commission's power to inspect and investigate such corporations was self-executing.

Turning our attention to § 13, we hold that it is self-executing. It gives the Legislature and the Corporation Commission the powers to enact laws or issue orders and regulations requiring publicly held corporations to make reports. Further legislation is unnecessary to give the Commission this power and indeed would be redundant.

In view of our disposition, we need not decide the Commission's contention that A.R.S. § 40–202(A) gives it the power to require reports from non-public service corporations acting as holding companies for public service corporations.

For the reasons stated in this opinion we affirm the judgment of the trial court upholding the Commission's authority to enter Decision No. 54504. The court of appeals' opinion is approved insofar as it affirms the trial court's judgment regarding APS and is vacated insofar as it reverses the trial court's judgment regarding AZP. The court of appeals' award of attorney's fees to AZP is also reversed.[3]

FELDMAN, V.C.J. and CAMERON, HOLOHAN, and MOELLER, JJ., concur.

---

**2.** See, *The Date of Election on the Constitution,* Phoenix, Arizona Republican, Dec. 9, 1910, at 1, Col. 1 (explanation of compromise); *Progress Marks Sixtieth Day of Convention,* Phoenix, Arizona Gazette, Dec. 8, 1910, at 1, Col. 1 (same).

**3.** An award of attorney's fees under A.R.S. § 12–348(A)(3) can only be made to a party which prevails on the merits. *State ex rel. Corbin v. Challenge, Inc.,* 151 Ariz. 20, 725 P.2d 727 (App. 1986).