[Civil No. 4042. Filed October 2, 1939.]

[94 Pac. (2d) 443.]

CORPORATION COMMISSION OF THE STATE OF ARIZONA, WILSON T. WRIGHT, W. M. COX, and AMOS A. BETTS, as Members of the Corporation Commission of the State of Arizona, Appellants, v. PACIFIC GREYHOUND LINES, a Corporation, Appellee.

Mr. Joe Conway, Attorney General, Mr. Earl Anderson and Mr. W. E. Polley, his Assistants, and Messrs. Fennemore, Craig, Allen & Bledsoe, Special Assistants, for Appellants.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellee.

LOCKWOOD, J.—This is an appeal from a judgment of the superior court of Maricopa county, vacating and setting aside an order of the Arizona Corporation Commission, hereinafter called the commission, made on June 12, 1937, and amending a certificate of convenience and necessity held by Central Arizona Transportation Lines, Incorporated, hereinafter called the applicant. The facts necessary for a consideration of the issues involved may be stated as follows:

On June 27, 1927, the commission issued a certificate of convenience and necessity to the Pickwick Stages Corporation, authorizing it to operate motor vehicles for the common carriage for hire of passengers, baggage and express between Phoenix and Ehrenburg, Arizona, by way of Wickenburg, serving all intermediate points. On January 16, 1931, the commission, pursuant to an assignment made by Pickwick Stages, transferred this certificate to Pacific Greyhound Lines, a corporation, hereinafter called plaintiff, and at all times since such certificate has been owned and held by plaintiff. On June 13, 1928, the commission issued a certificate of convenience and necessity to one Roy Hahnenkratt, authorizing the operation of motor vehicles in the common carriage of passengers, baggage and express for hire, between Phoenix and Prescott, by way of Wickenburg, but expressly excluded any service between Wickenburg and Phoenix, and points intermediate thereto. In February, 1933, this certificate was assigned by Hahnenkratt to the applicant.

The Pickwick Stages and plaintiff, its assignee, commenced operations and furnished service in accordance with the certificate first above mentioned up to and including the present time, with the exception of a period from February, 1931, to September, 1932, when the commission permitted suspension of the service because of poor road conditions between Wickenburg and Ehrenberg, and lack of traffic between Phoenix and Ehrenberg. To August 1, 1933, this service was somewhat irregular, but was made approximately weekly. Beginning with August 1, 1933, the plaintiff operated one schedule daily each way between Phoenix and Ehrenberg, by way of Wickenburg, and continued this until May 25, 1935, when two schedules daily in each direction were installed. From April 1, 1936, to August 1, 1936, three of these schedules were operated in each direction. From that date to December 31, 1936, the schedules were increased to four, while on January 1, 1937, and since, plaintiff has been operating five schedules daily each way.

At some time in 1928, an oral understanding was had between Pickwick Stages and Hahnenkratt, under which the latter began to, and did, render service as a common carrier, by motor vehicle, of passengers, baggage and express, for hire, between Phoenix and Wickenburg, serving all intermediate points, although he had no certificate of convenience and necessity to perform that service, the only certificate which he did have expressly excluding local service between Phoenix and Wickenburg and intermediate points. There was no agreement as to how long this service should continue, but Hahnenkratt did actually furnish it without objection from anyone until the transfer of his operating rights to the applicant in February, 1933, as above, and the applicant has continued it without objection by plaintiff until December 28, 1936. The fact that this service was being rendered by Hahnenkratt and

applicant was known to the members of the commission at all times, but no formal consent nor permission so to operate was ever given by the commission or by any member thereof.

Shortly before 1937 the control of the applicant passed through various intermediaries into the hands of the Atchison, Topeka and Santa Fe Railway Company, hereinafter called the Santa Fe. At the time this control was taken over, the Santa Fe was advised by an officer and director of applicant that the latter had no legal right to furnish service between Phoenix and Wickenburg and intermediate points, and an inspection of the records of the commission, which showed this fact was made by a representative of the Santa Fe. The Santa Fe, however, did know that the applicant had been rendering service between Phoenix and Wickenburg and intermediate points without objection from plaintiff, under the oral understanding or agreement above referred to.

On December 28, 1936, the plaintiff sent to applicant the following letter:

"Due to the present service of Pacific Greyhound Lines between Phoenix and Wickenburg, the reason for the oral agreement made with Mr. Hahnenkratt of your predecessor company, Black Canyon Line, whereby that line was permitted to carry local passengers between Phoenix and Wickenburg and intermediate points, no longer exists.

"Therefore, please be advised that effective January 1, 1937, this permission will be withdrawn and this agreement terminated."

Thereupon, and on January 4, 1937, applicant filed a request with the commission, praying either for an amendment to its then certificate of convenience and necessity, or, in the alternative, for a new certificate, authorizing it to operate motor vehicles in the transportation for hire of passengers, baggage and express to, from, and between Phoenix and Wickenburg, serv-

ing all intermediate points, and by an amended application thereafter claimed that it could and would coordinate its bus service with the rail service of the Santa Fe. This latter company has for many years continuously conducted a daily rail service in the transportation of passengers, baggage and express from Phoenix to Ehrenberg and points west, via Wickenburg, and from Phoenix to its main line system at Ash Fork, via Wickenburg and Prescott. This main line system, as is well known, is one of the principal transcontinental lines between the Pacific and Atlantic coasts. The applicant and the Santa Fe offered and were willing to provide coordination of rail and bus service between Phoenix and Wickenburg and intermediate points through the complete interchangeability of bus tickets issued by the applicant and rail tickets issued by the Santa Fe, and of incidental service, such as the carriage and storage of baggage of passengers. They also offered a lowering of rail fares to the level of bus fares between all points jointly served by the Santa Fe and the applicant. Up to January 4, 1937, the services and facilities furnished by plaintiff and its predecessor in interest had never been complained of by any person, and no order was ever issued directing them to enlarge, better or change their service. Plaintiff is financially able to comply with any order that might be made by the commission requiring an improvement of service now conducted by it, and is, and always has been, able, ready and willing to do so.

At a hearing held before the commission, at which plaintiff appeared in opposition to the granting of the request of applicant, and represented that it was ready, able and willing to furnish any service required, order and decision No. 8940 was made, which amended the certificate of convenience and necessity then held by the applicant by granting its petition in

full, without first ordering plaintiff to improve its service over the said route between Phoenix and Wickenburg and intermediate points in any manner whatever. Thereupon a motion for rehearing was made by plaintiff and denied, and the present case was filed in the superior court of Maricopa county, attacking the order of the commission as being unlawful and unreasonable. After various preliminary motions and demurrers were settled, the case was tried to the court without a jury, and a judgment was finally rendered in favor of plaintiff and against the commission, whereupon this appeal was taken.

There are thirteen assignments of error, which raise a number of propositions of law. The first is whether the concluding proviso of section 6, chapter 100, of the session laws of 1933, is constitutional. Chapter 100, *supra,* is a general statute regulating the transportation of passengers and property by motor common carriers for hire and private commercial carriers over the public highways of Arizona. Section 6 thereof reads, so far as material to this case:

"Common Motor Carrier Certificates; Application Therefor. No common motor carrier shall operate within this state as such carrier without first having obtained from the commission a certificate of public convenience and necessity. . . .

" . . . provided, that when an applicant requests a certificate to operate over a route, or routes, or in a territory already served by a common motor carrier, the commission shall have power, after hearing, to issue such certificate only when the existing common motor carrier operating over such route, or routes, or serving such territory, will not provide such service as shall be deemed satisfactory by the commission."

It is urged by the commission that this proviso of section 6, *supra,* is unconstitutional because it is in conflict with section 3 of article XV of the Constitution of Arizona, which is, so far as material, as follows:

"The Corporation Commission shall have full power to, and shall, prescribe just and reasonable classifications to be used, and just and reasonable rates and charges to be made and collected, by public service corporations within the State for service rendered therein, and make reasonable rules, regulations, and orders, by which such corporations shall be governed in the transaction of business within the State, . . . . "

In support of its contention, the commission relies upon the express language of section 3, *supra,* as interpreted by this court in the case of *State* v. *Tucson Gas etc. Co.,* 15 Ariz. 294, 138 Pac. 781, decided in 1914. The decision above cited was a case wherein the gas company was charged by a criminal information with collecting an unlawful rate for illuminating gas from a certain party. The rate collected was one which was prohibited by section 7 of chapter 52 of the first special session of 1912, and the question involved was stated by the court, in the opinion, as follows:

" . . . The question is, may a public service corporation establish and collect a minimum rate, notwithstanding this legislative expression to the contrary? It is the contention of appellee that this legislative act is repugnant to the Constitution of Arizona, and void in so far as it attempts to fix rates to be charged for the products named."

We considered and construed section 3 of article XV, *supra,* in that case in a somewhat lengthy and exhaustive discussion of the general powers of the corporation commission as conferred on it by the Constitution. Much of the language used in the opinion was broader than the specific issue involved, and might perhaps, when standing alone, be reasonably construed as a declaration that the commission is given powers by the Constitution of Arizona which would render section 6 of chapter 100, *supra,* unconstitutional. But in that portion of the opinion, which is decisive of the specific issue involved, we said:

"We are of the opinion that the people, by their Constitution, have said, in plain and unequivocal language, that 'the Corporation Commission shall have full power to, and shall, prescribe just and reasonable classifications to be used, and just and reasonable rates and charges to be collected, by public service corporations within the state for services rendered therein and (shall) make reasonable rules, regulations, and orders, by which such corporations shall be governed in the transaction of business within the state,' and that the power therein granted to the Commission is exclusive, and not to be exercised by the Legislature. For if 'such corporation' *'shall be governed* in the transaction of business' by the Commission in the *enumerated matters,** there is an implied exclusion of power in any other body or department to prescribe classifications, rates, charges, rules, regulations, or orders." (*This Italics ours.)

We think, strictly speaking, the case is authority only as to the powers of the commission over classification, rates and charges, and in view of the importance of the question involved and the somewhat ambiguous and perhaps conflicting language found in the opinion, we have decided to re-examine, as an original question, the extent of the authority of the commission as to regulation of the business of such corporations on other matters than the three enumerated.

The general rules governing corporations other than municipal, and their regulation, are found in article XIV of the Constitution of Arizona. Section 1 of that article reads as follows:

"The term 'corporation,' as used in this Article shall be construed to include all associations and joint stock companies having any powers or privileges of corporations not possessed by individuals or co-partnerships, and corporations shall have the right to sue and shall be subject to be sued, in all courts, in like cases as natural persons."

There is no doubt the definition of corporations given therein by its terms includes public service cor-

porations. Sections 2 and 14 of the article are in the following language:

"Section 2. Corporations may be formed under general laws, but shall not be created by special Acts. Laws relating to corporations may be altered, amended, or repealed at any time, and all corporations doing business in this State may, as to such business, be regulated, limited, and restrained by law."

"Section 14. This Article shall not be construed to deny the right of the legislative power to impose other conditions upon corporations than those herein contained."

If there were no further provisions in the Constitution referring specifically to public service corporations, it cannot be questioned that the legislature would have plenary authority over such corporations as well as all others, to regulate, alter and restrain their operations in any manner it might see fit, not inconsistent with other provisions of the Constitution of this state, or the Constitution of the United States. But article XV of the Constitution provides for the creation of a corporation commission, and section 3, *supra,* of the article gives certain powers to that commission.

The question then is whether the provision of section 3, *supra,* when it refers to the "full power" of the commission to

"make reasonable rules, regulations, and orders, by which such corporations shall be governed in the transaction of business within the State"

refers to all business of every nature carried on by public service corporations, or is limited to classification, rates and charges only, leaving sections 2 and 14 of article XIV, *supra,* to govern public service corporations in all matters not specifically delegated to the

commission, as they unquestionably would were it not for article XV of the Constitution.

In construing the provisions of the Constitution, it is clearly necessary that we consider the instrument as a whole, and endeavor to give such a construction to each and every part as will make it effective and in harmony with all the other parts. Applying that rule to the present case, we find there are several constitutional provisions, in addition to those which we have already quoted, which should be considered in determining the true meaning of section 3, *supra.* Among these are sections 5, 6 and 10 of article XV. They read as follows:

"Section 5. The Corporation Commission shall have the sole power to issue certificates of incorporation to companies organizing under the laws of this State, and to issue licenses to foreign corporations to do business in this State, as may be prescribed by law."

"Section 6. The law-making power may enlarge the powers and extend the duties of the Corporation Commission, and may prescribe rules and regulations to govern proceedings instituted by and before it; but, until such rules and regulations are provided by law, the Commission may make rules and regulations to govern such proceedings."

"Section 10. Railways heretofore constructed, or that may hereafter be constructed, in this State, hereby declared public highways, and all railroad, car, express, electric, transmission, telegraph, telephone, or pipe line corporations, for the transportation of persons, or of electricity, messages, water, oil, or other property for profit, are declared to be common carriers and subject to control by law."

We have had sections 3, 5, 6 and 10, of article XV, *supra,* under consideration in other cases besides the Tucson Gas etc. Co. case, *supra,* and it is evident from them that we did not intend to hold section 3 had the extremely broad meaning which it is claimed we

did give it in the Tucson Gas Company case. The first in time was that of *Arizona Corporation Com.* v. *Heralds of Liberty,* 17 Ariz. 462, 154 Pac. 202. This involved a construction of section 5, *supra.* It was urged therein that the corporation commission alone had the right to determine under what circumstances companies might be organized under the laws of this state, because the section gave it "the sole power to issue certificates of incorporation to companies organizing under the laws of this state." We held that this section meant only the power to *issue* the certificate and the license, and that the legislature had the full right to prescribe by law the kinds and qualifications of corporations, and the rules and regulations for the conduct of their business, and we made no distinction between public service corporations and any other type, a construction inconsistent with the theory advanced by applicant in its construction of section 3, *supra.*

Thereafter the case of *Arizona Eastern R. R. Co.* v. *State,* 19 Ariz. 409, 171 Pac. 906, 907, was decided. Par. 2166 of the Civil Code of 1913, commonly known as the train car limit law, fixed the number of cars which might be operated in any one train by any railroad in the state. It was urged that the paragraph was invalid as being in conflict with section 3 of article XV, *supra,* because the power of regulating a railroad company, which is clearly a public service corporation, was in the corporation commission to the exclusion of any other agency of government. This raised the issue before us in the present case, for the matter involved was not the regulation of a "classification, rate or charge," but of the general conduct of the business of the corporation. We referred to the Tucson Gas Company case, *supra,* stating as we have here, that the decision in that case referred solely to classifications, rates and charges, and that it was no

guide to the question as to whether the commission had the right to regulate other activities of a public service corporation. We said:

" . . . If it can be prevented, no clause, sentence, or word in the Constitution shall be superfluous, void, or insignificant; it being the duty of this court as an expositor to make a construction of all parts of the Constitution together, and not of one part only. It was observed by the great Chief Justice, in *Marbury* v. *Madison,* 1 Cranch 137, 2 L. Ed. 60, that it cannot be presumed that any clause in the Constitution is without effect, and a construction which would lead to such result is inadmissible, unless the language of the Constitution renders it imperative. . . .

"In section 10, *supra,* no concealment of the meaning may possibly occur by reason of the language there employed. It is plain and unambiguous. Not a dubious word appears. The general intent and meaning of the section stands out in bold relief. A railway as a public highway and a railroad corporation within the enumeration of corporations classed as common carriers is subject to control by law. If there be a prohibition or limitation, then, upon the exercise of this control, we must find the particular clause which subjects it to a limitation or qualification. We have in this section a general intention expressed in the instrument, but if in any other parts we find a particular intention expressed which is incompatible with this general intention, the particular intention is to be considered in the nature of an exception. The particular intent incompatible with the general intent will be treated as an exception; the general intent being restrained to that extent only as may be imperatively necessary to the fitness of the matter contained in the exception.

"In the Tucson Gas & Electric Company case, we found a particular intent in the matter of prescribing classifications, rates, and charges to be made and collected by public service corporations contained in section 3 which was incompatible with the general intent found in section 10; that the authority of the Corporation Commission to prescribe classifications, rates, and

charges under said section is exclusive. Construing the various sections of article XV of the Constitution together, and looking at the language employed with a regard to the general purview of the instrument, no other construction is possible if its several provisions are to be harmonized and made into a workable instrumentality. But it by no means follows that such an interpretation calls for an expression that the people have surrendered all governmental power over all corporations as they are classified either as public service corporations, common carriers, or public highways. Yet, if the view pressed upon this court by the appellant is to prevail, it naturally follows that the extent and elasticity of the power conferred upon the Corporation Commission in section 3 is subversive of all legislative control whatsoever, and this regardless of other provisions to be found in the Constitution bearing upon the matter; that, by construction, section 10 is so much Dead Sea fruit turning to ashes upon the lips. . . .

" . . . To prescribe classifications, rates, and charges of public service corporations is the duty, and the exclusive duty, of the Corporation Commission. Following this expression of duty is the sentence 'and make reasonable rules, regulations and orders by which such corporations shall be governed in the transaction of business within the state.' . . .

"It is noted in the first part of section 3 that the full power given to the Corporation Commission to make reasonable rules, regulations, and orders by which public service corporations shall be governed in the transaction of business within the state is a grant in general terms, and is associated with and directly follows the full power to prescribe classifications, rates, and charges, which is a specific power granted in particular terms and directly related to the subject matter of the transaction of its business by a public service corporation. . . . If, by construction, the first general grant is made to cover all power whatsoever, and be exclusive of any other agency, then the specific exclusive power to prescribe classifications, rates, and charges is superfluous, as is also the permissive authority given to make and enforce reason-

able rules, regulations, and orders for the convenience, comfort and safety, and the preservation of the health of the employees and patrons of the public service corporations. It must likewise follow as a natural sequence that section 10 of article XV of the Constitution is also a superfluity; that the words designating railways as public highways, and railroad corporations as common carriers, and subjecting them to the control of the law, are the mere skins of thought with no body or meaning whatsoever; that the entire section is an exotic incumbering the ground of the Constitution, and not a plant indigenous to its soil. We are not called upon, nor is this court permitted, to involve its provisions with an incongruity which must result in so manifest an absurdity. By comparing the commanding words employed in the first part of section 3 with the permissive words found in the last part thereof, and measuring them by the extent of power reserved in section 10 to the legislative branch of the government, we are thus afforded opportune and helpful indication that the grant of power contained in the first part of section 3 is not to be applied without some limitation. . . . ''

It may be said that motor vehicles are not mentioned in section 10, *supra,* and, therefore, they are not covered thereby. While it is true that motor vehicles are not expressly mentioned in this section, we think it is evident that this is because at the time of the adoption of the Constitution in 1910 there were no motor vehicles in existence in Arizona, and perhaps not in the United States, engaged in the business of common carriers. In view of the very inclusive language used in the section, we think it obvious that it was intended to cover all known methods for the transportation of persons, electricity, messages, water, oil, or any property for profit, and that it should be construed as including motor vehicles operating as common carriers for profit on the public highways. All of these corporations are declared to be ''subject to

control by law'' which, as we have said, clearly implies a legislative act.

The next case was that of *Pacific Gas & Elec. Co.* v. *State,* 23 Ariz. 81, 201 Pac. 632. This involved the constitutionality of an initiated measure regulating electric poles, wires, cables and appliances, which was in conflict with the regulation of such matters by the corporation commission. We held that both the commission and the legislature had covered the same ground and that both acted with authority, but that the authority of the corporation commission was superior to that of the legislature. While in this opinion we approved both the Arizona Eastern and Tucson Gas cases as stating the law, it appears to us on a re-examination of the question that our conclusion that the order of the corporation commission superseded the initiative adopted by the people was not consistent with the decision in the Arizona Eastern case.

Another case which considered the effect of section 3, *supra,* was that of *Yuma Gas, Light & Water Co.* v. *City of Yuma,* 20 Ariz. 153, 178 Pac. 26. The matter involved was a proviso of section 3 which was not under consideration in the Tucson Gas case, and is, therefore, not authority for the question involved herein. Nevertheless, we referred to that case and pointed out again that it was one involving classifications, rates and charges alone.

In the case of *Phoenix Railway Company* v. *Lount,* 21 Ariz. 289, 187 Pac. 933, 935, we again referred to the Tucson Gas case, and the ruling therein was that ''so far as rate fixing was concerned, the Corporation Commission possessed the paramount power.'' We also approved of the rule laid down in *Arizona Eastern* v. *State, supra.*

In *Haddad* v. *State,* 23 Ariz. 105, 201 Pac. 847, we construed section 6 of article XV, *supra,* and held the legislature could extend the power of the commission

beyond that given it by the Constitution, following that rule in *Menderson* v. *Phoenix*, 51 Ariz. 280, 76 Pac. (2d) 321, and *Northeast Rapid Transit Co.* v. *Phoenix*, 41 Ariz. 71, 15 Pac. (2d) 951, and by the language used we assumed that such legislation did not infringe on the power given the commission under section 3, *supra*.

It will be seen from the foregoing recital that our decisions have not been entirely consistent in all respects, and particularly in some of the reasoning and the language used. But running all through them we find an emphatic statement, whenever the Tucson Gas Company case is referred to, that the decision therein only affirms the exclusive power of the corporation commission in so far as charges, rates, classifications and regulations pertaining thereto are concerned.

Re-examining the meaning of section 3, *supra*, in the light of the other sections of the Constitution affecting the question, and the language and reasoning of all of our decisions, we are of the opinion that the

"full power to . . . make reasonable rules, regulations and orders by which such corporations shall be governed in the transaction of business within the State"

qualifies and refers only to the power given the commission by the same section to

"prescribe just and reasonable classifications to be used, and just and reasonable rates and charges to be made and collected by public service corporation,"

and that both under the direct language of the Constitution and the police power inherent in the legislative authority, the paramount power to make all rules and regulations governing public service corporations not specifically and expressly given to the commission

by some provision of the Constitution, rests in the legislature, and it may, therefore, either exercise such powers directly or delegate them to the commission upon such terms and limitations as it thinks proper. The limitation set forth in section 6, of chapter 100, *supra,* is, therefore, constitutional. The meaning and purpose of the limitation is clear.

■ In the case of *Corporation Commission* v. *People's Freight Line,* 41 Ariz. 158, 16 Pac. (2d) 420, we referred to the public policy of the State of Arizona in reference to public service corporations, as laid down by the legislature in chapter 130 of the Session Laws of 1919, and amended and carried forward in section 736, Revised Code of 1928. Therein we stated that public policy was one of regulated monopoly, rather than the competitive system, and held that it would be an abuse of discretion to authorize a competing carrier to enter into a certain class of business so long as an existing carrier, with a prior certificate of convenience and necessity for that class of business, furnished proper service. That we were correct in our understanding of the intention of the legislature is shown conclusively by the proviso in section 6, *supra,* for it, in substance, states in definite and positive language what we said was the implication to be drawn from section 736, *supra.*

■ We consider next propositions of law two and three advanced by the commission. They are, in effect, that the plaintiff is estopped from questioning the validity of the agreement made with Hahnenkratt and the applicant that it would not object to their operating between Phoenix and Wickenburg, although their certificate of convenience and necessity forbade such operation; that since this agreement was based upon a good consideration, it was not a license revocable at will, and that plaintiff, having accepted the benefits flowing from its performance,

cannot be heard for its own benefit to assert its illegality, or that it is or was contrary to public policy.

If this action involved a suit for damages or injunctive relief against a breach of the alleged agreement, it might perhaps be claimed that an estoppel had arisen, or that the agreement was not subject to revocation by the plaintiff. The issue, however, goes deeper than that. As we have stated, the regulated monopoly, which is the public policy of the State of Arizona, was not established primarily for the benefit of the public service corporations affected thereby, but for the benefit of the general public, any benefits accruing to these corporations being merely incidental to the principal object of the rule. Such being the case, when the question involved is the carrying out of this public policy by a public agency, we think that no question of estoppel as between the carriers can arise, and that the commission must determine whether the certificate applied for shall issue on the basis laid down by the law.

The fourth and fifth propositions of law should also be considered together. Summarizing them, they are that section 6, *supra,* does not protect a certificate holder which has deliberately failed in its full duty to the public, and does not apply to an applicant offering a different service, which public convenience and necessity requires, and which the certificate holder is unable to furnish, and that the commission, when called upon to pass upon the application, may consider it as of the time when the application was filed and in light of the facts then existing.

We think the general propositions of law thus stated are correct, but the record does not show either that the plaintiff failed to furnish any service which it was directed to, or that it was unable to furnish the service offered by the applicant, or that the commission, when it had determined what service public con-

venience and necessity required, gave the plaintiff an opportunity to furnish it. The proper procedure to be followed by the commission, under the circumstances set forth in the record, was as follows: It should first have examined the new service offered by the applicant and determined whether it is more in the interest of the traveling public than that furnished by the plaintiff. If its answer is in the affirmative, it should then offer to the plaintiff an opportunity to furnish such new service, and if plaintiff can, and will, do so, should deny the application. If it cannot, or will not, furnish it, and the new service offered can reasonably be separated into two parts, one being a service which can, and will, be furnished by the plaintiff, and the other one which, for any reason, is beyond its power to furnish, and this separation will not injure the interests of the traveling public, the commission should then issue a certificate authorizing the applicant to carry on such portion of the service as it is beyond the power of the plaintiff to furnish, but prohibiting it from giving such service as can, and will, be given by the plaintiff. If, however, the new service offered cannot thus be reasonably separated, the commission should then issue the certificate of convenience and necessity for the new service to the applicant. This course preserves as the paramount consideration the benefit to the traveling public, while still protecting the interest of the existing certificate holder so far as it can be without injury to that public.

Since it appears that the commission did not follow this procedure, it is not necessary for us to consider the other questions raised by the record. The trial court was correct in rendering the judgment which it did. This is not, however, a bar preventing the applicant from presenting a new request for a certificate of convenience and necessity to the

180

commission so that it may act thereon in accordance with the principles laid down herein.

The judgment of the superior court is affirmed.

ROSS, C. J., and McALISTER, J., concur.