746 P.2d 4

**ARIZONA PUBLIC SERVICE COMPANY, an Arizona corporation; and AZP Group, Inc., an Arizona corporation, Plaintiffs-Appellants,**

v.

**ARIZONA CORPORATION COMMISSION, Defendant-Appellee.**

**No. 1 CA–CIV 8922.**

Court of Appeals of Arizona, Division 1, Department B.

July 14, 1987.

Review Granted Dec. 15, 1987.

Snell & Wilmer by Steven M. Wheeler and Martha E. Gibbs, Phoenix, for plaintiffs-appellants.

Neal J. Beets, Chief Counsel, Arizona Corp. Com'n, Phoenix, for defendant-appellee.

Fennemore, Craig, von Ammon, Udall & Powers, Phoenix, for amici curiae, U.S. West, Inc. and Mountain Bell Holdings, Inc.

## OPINION

HAIRE, Judge.

In this appeal, we review a summary judgment entered by the superior court affirming an order of the Arizona Corporation Commission (the "Commission"). The order, Decision No. 54504, requires AZP

Group, Inc. ("AZP") and Arizona Public Service Company ("APS") to submit to the Commission detailed monthly reports concerning their past business activities and future plans.

## FACTS

The parties submitted a joint statement of facts for the adjudication of their cross motions for summary judgment in the superior court appeal from the Commission's order. The joint statement shows that on March 15, 1985, APS, the largest public utility in the state of Arizona, announced that it would submit to its shareholders a plan for a major reorganization of its entire corporate structure. Under the restructuring plan, APS would make itself a wholly-owned subsidiary of AZP. AZP would also become the holding company for former APS subsidiaries El Dorado Investment Company, Energy Development Company, and Malapai Resources Company. The stockholders of APS approved the restructuring plan at their annual meeting, and on April 29, 1985, after APS filed amendments to its articles of incorporation, the restructuring became effective.

Pursuant to the restructuring plan, the owners of APS common stock exchanged their shares for a like number of shares of AZP stock. As a result, AZP acquired all of the common stock of APS. Initially, APS contributed approximately one hundred percent of the assets and one hundred percent of the revenues and earnings of AZP.[1] The companies share other links as well. All members of the AZP board of directors are also members of APS's board, the officers of AZP are also officers of APS, and AZP and APS shared the same business office.

In response to the restructuring plan, the Commission requested information from APS and AZP about the proposed restructuring, including questions about the relationship between AZP and its subsidiaries, the role AZP would play in managing APS, and the plans of the companies to diversify their operations. APS and AZP responded in writing to the Commission's questions and sent a representative to a special open meeting convened by the Commission for the purpose of continuing the investigation.

The Commission convened a second special open meeting on April 24, 1985 to deliberate the text and terms of a recommended order that would require both APS and AZP to submit reports to the Commission, on a monthly basis, about certain future transactions and activities involving one or both companies. Before the second special open meeting, the Commission held no formal evidentiary hearing with respect to these reporting requirements and gave no special notice to APS or AZP that the Commission was contemplating the issuance of an order. At the end of the meeting, the Commission voted to impose the reporting requirements and five days later issued Decision No. 54504.

Decision No. 54504 requires APS to make monthly reports about transactions between APS and AZP or its subsidiaries, including information about financing, products, services, and personnel. The order also requires AZP to make similar reports concerning its transactions with its non-public service subsidiaries and further requires AZP to submit reports concerning its diversification activities and plans, all board resolutions and minutes reflecting those plans, as well as an analysis of the benefits and risks to APS and its customers from such proposed ventures. AZP, under protest, complied with the order by filing approximately two pages of reports, and APS complied by filing approximately thirty pages of reports for the period May 1985 through September 1985.

In its order, the Commission did not find that the immediate adoption of the reporting requirements was necessary for the preservation of the public peace, health, or safety. The Commission, however, expressed its concern over the formation of

1. This has since changed. According to AZP press releases in December of 1986, Merabank has officially become a wholly-owned subsidiary of AZP, adding 5.8 billion dollars in assets to the approximately 6 billion dollars in assets contributed by APS. Also, AZP's name has been changed to Pinnacle West.

holding companies by public utilities and recognized a need "to better define its role in the reorganization and diversification activities of the utilities it regulates." The Commission's primary concern was that its regulatory authority over public utility companies would be weakened or bypassed by the establishment of holding companies. To insure reliable utility service at fair and reasonable rates and to safeguard against such practices as the misuse of a public utility's assets or credit by a non-regulated affiliate, the Commission anticipated a later formal adoption of rules and regulations addressing the restructuring and diversification of public service corporations and their holding companies.

In their motion for summary judgment in the superior court and now on appeal, AZP and APS contend that the Commission (1) lacked jurisdiction to order AZP to comply with the reporting requirements, (2) impermissibly interfered with the internal management of both companies by requiring them to report strategic information concerning their business plans and activities, (3) lacked any factual or legal basis and failed to articulate its reasons for issuing the order, and (4) denied the companies their right to procedural due process by issuing the order without according the companies notice and an opportunity to be heard. The superior court found that:

> "(1) As to both plaintiffs, the issuance of the reporting order is a valid exercise of the jurisdiction conferred upon the Commission by Article 15, §§ 3, 4 and 13 of the Constitution of the State of Arizona. Accordingly, the Court need not determine that AZP, Inc., is a public service corporation.
>
> "(2) The reporting order is not a Rule requiring compliance with the APA [Arizona Administrative Procedure Act]. Neither are procedural due process rights implicated here.
>
> "(3) The reporting order does not impermissibly discriminate against the plaintiffs ...."[2]

**2.** The companies did not raise the issue of discrimination in their briefs on appeal. There-fore, we do not consider this issue.

## JURISDICTION

The companies first claim that AZP has never been found to be a public service corporation, nor could it be. Accordingly, they urge that the Commission lacked jurisdiction to issue the order as to AZP because the order fell outside the scope of the Commission's jurisdiction over non-public service corporations. The Commission responds that it has explicit constitutional and statutory authority to require public service corporations and publicly held corporations to report information pertaining to their acts and operations and that, in any event, AZP could be found to be a public service corporation.

Public service corporations are defined, in relevant part, as "[a]ll corporations other than municipal engaged in furnishing gas, oil, or electricity for light, fuel, or power...." Ariz. Const. art. 15, § 2. The Commission itself may not give "public service" designation to businesses not specifically listed in art. 15, § 2, nor may the legislature expand the Commission's jurisdiction by giving "public service" designation to businesses falling outside the scope of the constitutional definition. *Rural/Metro Corporation v. Arizona Corporation Commission*, 129 Ariz. 116, 118, 629 P.2d 83, 85 (1981); *Menderson v. City of Phoenix*, 51 Ariz. 280, 285, 76 P.2d 321, 323 (1938). The parties concede that APS falls within the definition of "public service corporation," and thus within the Commission's jurisdiction. AZP, however, does not furnish electricity or any other service to the public, nor does it have the intent or authority to offer utility service to the public in any fashion. Its express business purpose, as set forth in its articles of incorporation, is "the acquisition and holding of securities of other corporations for investment purposes." Thus, AZP does not fall within the strict constitutional definition of a "public service corporation."

The Commission argues otherwise. First, the Commission asserts that AZP

could be found to be a public service corporation because AZP is engaged in furnishing electricity to the public through its wholly-owned subsidiary, APS. In rejecting this argument, we simply note that the constitutional definition is to be strictly construed and that AZP itself does not provide any public service listed in the definition. *See* Ariz. Const. art. 15, § 2; *Rural/Metro Corp.*, 129 Ariz. at 117, 629 P.2d at 84. Furthermore, the lower court did not make a finding as to whether AZP was a public service corporation and the Commission has pointed to no instance in which a holding company has been determined to be a public service corporation.

Second, the Commission directs our attention to the control AZP exercises over APS through stock ownership, virtually identical officers and boards of directors, and shared corporate headquarters. Equally important, it asks us to note that APS created AZP and remains the principal asset and producer of revenue for AZP. Therefore, the Commission urges, we should disregard the separate corporate identities and consider the two corporations as a single legal entity, in effect, "piercing the corporate veil."

■ A basic axiom of corporate law is that a corporation will be treated as a separate entity unless sufficient reason appears to disregard the corporate form. *Standage v. Standage*, 147 Ariz. 473, 475, 711 P.2d 612, 614 (App.1985). When the facts disclose undercapitalization or when observance of the corporate form will sanction a fraud or promote an injustice, the corporate fiction will be disregarded. *Washington National Corporation v. Thomas*, 117 Ariz. 95, 101, 570 P.2d 1268, 1274 (App.1977), *disapproved on other grounds, Greenfield v. Cheek*, 122 Ariz. 57, 593 P.2d 280 (1979). We decline to "pierce the corporate veil" because both AZP and APS have maintained their separate corporate identities and because the Commission has offered no evidence of undercapitalization, fraud, misconduct, or impropriety in the management or operation of the two companies.

3. We express no opinion as to whether such legislation would be constitutionally valid. *See*

■ Finally, the Commission asserts that it must have the authority to monitor reorganizations because they may constitute efforts to evade proper regulatory jurisdiction. We agree that the cases cited by the Commission stand for the propositions that a regulatory agency may prohibit parent/subsidiary companies from evading regulation or a parent corporation from doing by means of the subsidiary that which the parent itself was prohibited from doing. Again, however, the Commission has offered no evidence that the companies have reorganized in an effort to evade regulation, nor any evidence that either AZP or APS is seeking to do anything it is prohibited from doing. In fact, the Commission concedes that in this appeal it is not questioning the reorganization itself but rather seeks information needed to fulfill its duties in regulating and setting rates for APS.

As explained below, the Commission will be able to obtain from APS much of the information it needs. On the other hand, its perceived need to obtain information from AZP, however meritorious, is not a ground for finding jurisdiction over AZP under Arizona's constitutional and statutory provisions governing public service corporations. The granting of such jurisdiction over a non-public service holding company is a concern more properly addressed to the state legislature.[3] We add, however, that our conclusions here should not be read as defining or limiting the Commission's power to investigate by subpoena and the calling of witnesses during rate-making or rule-making proceedings. *See* Ariz. Const. art. 15, § 4.

We hold that AZP is not a public service corporation either by constitutional definition or because its wholly-owned subsidiary is a public service corporation.

We turn, then, to an examination of the Commission's jurisdiction over non-public service corporations. Article 14 of the Arizona Constitution provides the general rules governing the creation and regulation of corporations other than municipal. Ariz.

*Rural/Metro Corp.*, 129 Ariz. at 116–118, 629 P.2d at 83–85.

Const. art. 14, §§ 1 to 19; *Arizona Corporation Commission v. Pacific Greyhound Lines,* 54 Ariz. 159, 168–169, 94 P.2d 443, 447 (1939). Corporations are creatures of statute and the *legislature* has the full power to impose conditions on their existence, other than those conditions inconsistent with the Arizona Constitution or the United States Constitution. *See* Ariz. Const. art. 14, §§ 2 and 14; *Pacific Greyhound Lines,* 54 Ariz. at 169, 94 P.2d at 447. If there were no other constitutional provisions, the legislature alone would possess plenary power over both public service and non-public service corporations. *Pacific Greyhound Lines,* 54 Ariz. at 169, 94 P.2d at 447.

Article 15, however, delegates to the Corporation Commission broad regulatory and supervisory powers over public service corporations. Ariz. Const. art. 15, §§ 1 to 19; *Wylie v. Phoenix Assurance Co.,* 42 Ariz. 133, 139, 22 P.2d 845, 847 (1933). But in contrast to its broad jurisdiction and power over public service corporations, the Commission has only limited jurisdiction over non-public service corporations. *See* Ariz. Const. art. 15, §§ 4, 5, and 13; *Wylie,* 42 Ariz. at 136–137, 22 P.2d at 846; *see also State v. Jones,* 15 Ariz. 215, 137 P. 544 (1914). Under § 4, the Commission has the power to "inspect and investigate" the "property, books, papers, business, methods, and affairs of any corporation whose stock shall be offered for sale to the public ...." Under § 5, the Commission has the sole power to issue certificates of incorporation and licenses to do business in this state. Finally, under § 13, the Commission may require reports and other information from public service corporations and "corporations whose stock shall be offered for sale to the public."

■ The Commission argues that the superior court properly found §§ 4 and 13 "unambiguous" and "unmistakably clear," granting the Commission the jurisdiction and power to require reports from any corporation that has ever offered its stock for sale to the public, that is, any publicly held corporation. We disagree. The only powers conferred upon the Commission over corporations other than public service corporations are found in §§ 4 and 5 of art. 15, and "these powers pertain to the right to investigate them when they are offering for sale to the public their stock, and to their qualifications to do business in the state." *Wylie,* § 13, but given the identical language in § 4, "corporations whose stock shall be offered for sale to the public," common sense and the canons of constitutional construction dictate that we give those words the same meaning. *See Pacific Greyhound Lines,* 54 Ariz. at 170, 94 P.2d at 447. Mindful of our duty to strictly construe the constitutional provisions granting jurisdiction to the Commission, we hold that the Commission's jurisdiction over non-public service corporations is limited to matters relating to the issuance of stock to the public or to the issuance of licenses or certificates of incorporation.

The Commission's reliance on the implementing statutes for a further grant of jurisdiction is misplaced. The statutes implementing the constitutional provisions of article 15 refer specifically and exclusively to public service corporations. *See, e.g.,* A.R.S. § 40–202 (do all things "necessary and convenient" to regulate public service corporations); § 40–204 (reports by public service corporations); *see generally* A.R.S. §§ 40–201 to 40–464 ("Public Service Corporations Generally"). The statutes cannot be read as an attempt by the legislature to expand the Commission's jurisdiction to regulate non-public service corporations.

In part, the Commission confuses the Commission's "power" with its "jurisdiction" to exercise that power. The legislature may "enlarge the powers and extend the duties" of the Commission. Ariz. Const. art. 15, § 6. The legislature, however, may enlarge and extend the Commission's powers *only* when the Commission has been given jurisdiction over the subject matter by the constitution. *Rural/Metro Corp.,* 129 Ariz. at 118, 629 P.2d at 85; *Commercial Life Ins. Co. v. Wright,* 64 Ariz. 129, 140, 166 P.2d 943, 950 (1946). At most, the statutes relied on by the Commission expand the Commission's power to govern the corporations over which it possesses constitutional jurisdiction: public

service corporations. In passing the statutes, the legislature did not purport to expand the jurisdiction of the Commission over non-public service corporations, nor did it attempt to redefine "public service corporations," an attempt that would be improper under *Rural/Metro Corp.*

■ Read as a whole, the constitutional provisions creating the Commission and the implementing statutes grant the Commission broad jurisdiction and power to supervise and regulate public service corporations, but only limited jurisdiction to regulate non-public service corporations. The Commission's jurisdiction over non-public service corporations, unless expanded by the legislature under its article 14 constitutional powers, is limited to instances in which the corporation is seeking a license or a certificate of incorporation or to matters pertinent to an offering of stock for sale to the public by the corporation. Neither is applicable here. Thus, we find that the Commission lacked jurisdiction to order AZP to submit the reports required by Decision No. 54504 and we strike § V of that order. Because we reverse as to AZP on jurisdictional grounds, we need not address AZP's further contention that a non-public service corporation whose stock is traded on a national stock exchange is exempt from the Commission's regulation even relating to its stock offerings.

## INTERFERENCE WITH CORPORATE MANAGEMENT/LACK OF A REASONABLE BASIS

Both APS and AZP contend that the Commission's order impermissibly interferes with the internal management of the companies and lacks any basis in fact, law or purpose, thus rendering it unreasonable, arbitrary, or otherwise unlawful. The companies challenge in particular Section V of the order, which requires AZP to report on its diversification activities and its future plans, financing, and management changes. Because we find that the Commission lacked jurisdiction over AZP, we need not address the extent of the Commission's power to "inspect and investigate" and to require reports from non-public service cor-

porations concerning their plans and future activities. *But cf. Polaris International Metals Corp. v. Arizona Corporation Commission,* 133 Ariz. 500, 506, 652 P.2d 1023, 1029 (1982) (administrative agencies have broad investigatory powers, but when an Arizona administrative agency unreasonably infringes on the liberties of a corporation, the Arizona courts must be able to curb the abuse of power); *Wright,* 64 Ariz. at 140, 166 P.2d at 950 (the Commission's specific constitutional power over the sale of securities is limited to inspection and investigation).

Turning to APS, as previously noted, article 15 of the Arizona Constitution delegates to the Commission broad regulatory and supervisory powers over public service corporations. *See* Ariz. Const. art. 15, §§ 1 to 19; *Wylie,* 42 Ariz. at 139, 22 P.2d at 847. As a *quid pro quo* for its monopoly status, a public service corporation is subject to vigilant and continuous regulation by the Corporation Commission. *Davis v. Arizona Corporation Commission,* 96 Ariz. 215, 218, 393 P.2d 909, 911 (1964). Under article 15, § 3, the Commission has broad powers to set "just and reasonable" rates and to make reasonable rules, regulations, and orders for public service corporations. Under § 4, the Commission "shall have power to inspect and investigate the property, books, papers, business, methods, and affairs ... of any public service corporation doing business within the state ...."

Under § 13:
"All public service corporations and corporations whose stock shall be offered for sale to the public *shall make such reports* to the Corporation Commission, under oath, and *provide such information* concerning their acts and operations as may be required by law, or by the Corporation Commission." (Emphasis added.)

The statutes implementing these constitutional provisions are equally broad. "The commission may supervise and regulate every public service corporation in the state and *do all things,* whether specifically designated in this title or in addition thereto, *necessary and convenient* in the

exercise of such power and jurisdiction." A.R.S. § 40–202(A) (emphasis added). The same section requires public service corporations to do everything necessary to comply with the Commission's orders, decisions, and regulations. A.R.S. § 40–202(B). Furthermore, public service corporations are required to furnish reports to the Commission and to provide "all other information required by it to carry into effect the provisions of this title and shall make specific answers to all questions submitted by the commission." A.R.S. § 40–204(A).

Under its constitutional mandate to set reasonable rates and to make reasonable rules and regulations to govern public service corporations, the Commission sought information from APS needed to achieve those goals. In the order itself, the Commission acknowledged the recent creation of AZP as a holding company for APS and expressed its concern about the reorganization and diversification activities of the utilities it regulates. The Commission pointed out that its authority over public utility companies may be weakened, that cost allocation formulas and transfer pricing mechanisms may be upset, that the assets or credit of public utilities may be used to subsidize non-utility affiliates, that the skill and attention of management may be drawn away from the public utility toward the non-utility businesses, and that reorganization and diversification may create other unreasonable financial risks for captive public utility customers. We find these reasons to be stated with sufficient clarity to permit a reviewing court to assure itself that the Commission's order was not arbitrary or unreasonable. *See Northern Natural Gas Co. v. Federal Energy Regulatory Comm'n*, 785 F.2d 338, 342 (D.C.Cir. 1986).

Confronted with the reorganization and future diversification of APS, the largest public service corporation in the state, and its newly created holding company, the Commission sought information to carry out its constitutional duties and to aid it in future rule-making proceedings. It sought that information in the form of reports; reports clearly authorized by the Arizona Constitution and the implementing stat-utes. As the Commission noted, it has not sought by its order to prohibit the corporate reorganization of APS or to prohibit any transaction proposed by AZP or its subsidiaries. The Commission has not substituted its judgment for that of APS's management, nor has it attempted to prohibit APS from formulating corporate plans and policies or from carrying through with those plans and policies. The Commission has simply sought information concerning APS's major financial transactions and changes in management personnel.

■ As a public service corporation, APS is required by the broad and unrestricted language of article 15, § 13 of the Arizona Constitution and A.R.S. § 40–204 to make such reports to the Corporation Commission as the Commission requires. In return for the benefits of its monopoly status, APS is subject to the close scrutiny and regulatory power of the Commission. The price the company pays for its special status is a greater visibility of its internal workings and a greater degree of interference by the public agency created to monitor it. Thus, we find the Commission's reporting order authorized and justified by the constitution and its implementing statutes, reasonable in scope, reasonably articulated, and not unduly intrusive on the internal management of APS.

## PROCEDURAL DUE PROCESS

The superior court held that the reporting order was not a "Rule" requiring compliance with the rule-making procedures of the Arizona Administrative Procedure Act, A.R.S. §§ 41–1001 to 41–1005. It further held that no procedural due process rights were implicated. The companies agree in part but argue that Decision No. 54504 is an adjudicatory order that required adherence to the principles of due process embodied in the federal and state constitutions and codified in the contested case provisions of the Arizona Administrative Procedure Act, A.R.S. §§ 41–1009 to 41–1011 (renumbered as §§ 41–1061 to 41–1063 by Laws 1986, Ch. 232, § 3). The Commission responds that the order is sim-

ply an investigatory order, not an adjudicatory order that would require notice and an opportunity to be heard. Alternatively, the Commission argues that, under A.R.S. § 40–254(A) (action to set aside or modify an order of the Commission), APS and AZP had a full and fair opportunity to be heard in a trial *de novo* before the superior court.

In regulating public service corporations, the Commission may accomplish its goals by use of rules and regulations of general applicability or by the use of orders pertaining to particular situations or to particular public service corporations. *Arizona Corporation Commission v. Palm Springs Utility Company, Inc.*, 24 Ariz. App. 124, 128, 536 P.2d 245, 249 (1975). When the Commission is exercising a judicial or quasi-judicial function, due process of law requires that a hearing be held before a decision. *Southern Pacific Company v. Arizona Corporation Commission*, 98 Ariz. 339, 347, 404 P.2d 692, 697 (1965). This general rule of administrative law is incorporated into many of the statutes governing the Commission's regulatory power. *See, e.g.*, A.R.S. § 40–246 (hearing upon complaint against a public service corporation); § 40–249 (hearing upon complaint by a public service corporation); § 40–250 (hearing on rate or other change in operations by public service service corporation); § 40–251 (hearing on evaluation of property of public service corporations).

We note, however, a common thread running through the statutes and the case law: in each, the Commission is acting in a judicial or quasi-judicial manner, that is, the Commission is resolving a conflict between a public service corporation and the public or is ruling on rate changes or property valuations of a public service corporation that will directly affect the public. In such instances, due process requires that the Commission give the affected parties notice and an opportunity to be heard. In contrast, the reporting order involved here does not adjudicate a conflict between APS and any other person, nor does it require APS to alter its finances, property, corporate policies, or management personnel in any significant manner. The Commission

is merely seeking information to aid it in its rate setting and regulatory duties over APS, requiring reports that are clearly authorized under the Arizona Constitution and its implementing statutes. Furthermore, these reporting provisions, article 15, § 13 of the Arizona Constitution and A.R.S. § 40–204(A), are extremely broad in scope and contain no requirement for notice or hearing before the Commission may act.

■ We agree with the companies that a corporation is a "person" within the meaning of the due process clause. *See Blawis v. Bolin*, 358 F.Supp. 349, 354 (D.Ariz. 1973). The threshold question in a due process analysis is whether a person's constitutionally protected interest has been implicated. *Baumann v. Arizona Department of Corrections*, 754 F.2d 841, 843 (9th Cir.1985). More specifically, to determine whether a person has been deprived of a protected interest without due process of law, the court must inquire whether the state's action implicates a protected interest, whether the state's interest justifies the degree of infringement on the interest, and whether appropriate process was provided to assure that the interest was not arbitrarily deprived. *Large v. Superior Court, in and for Maricopa County*, 148 Ariz. 229, 235–236, 714 P.2d 399, 405–406 (1986).

■ When the Commission has issued an order affecting a corporation's property or liberty interest, the courts have not hesitated to require notice and a hearing. *See Palm Springs*, 24 Ariz.App. at 126, 536 P.2d at 247 (order requiring a water company to furnish water of a specified quality); *Southern Pacific Company*, 98 Ariz. at 347–348, 404 P.2d at 697–698 (order requiring a railroad to restore specified train service); *Southern Pacific Company v. Arizona Corporation Commission*, 84 Ariz. 365, 329 P.2d 883 (1958), *appeal dismissed*, 359 U.S. 532, 79 S.Ct. 1136, 3 L.Ed. 2d 1028 (1959) (order requiring the railroad to install warning signals at a particular crossing). In this matter, however, we find no property or liberty interests involved. Neither the legislature nor the Commission

has created in APS an exclusive property right to the information sought by the Commission, nor have they created a liberty interest in APS to be free from the Commission's inquiries. Rather, under the Arizona Constitution and the Arizona statutes, the Commission expressly reserves the power to require reports from APS and other public service corporations.

The companies also argue that because A.R.S. § 40-252 requires notice and an opportunity to be heard before the Commission may rescind, alter, or amend "any order or decision" made by the Commission, it would be absurd to permit the original issuance of an order without notice and a hearing. In our opinion the statutory context reveals that A.R.S. § 40-252 was intended to apply to the amendment of adjudicatory orders or decisions and orders or decisions involving constitutionally protected liberty or property interests. As such, it would not apply to the type of order involved in this litigation. We therefore hold that the procedures employed by the Commission in investigating and issuing its order, Decision No. 54504, did not infringe upon statutory or constitutionally protected due process rights of APS.

For the reasons stated in this opinion, we affirm the Commission's decision as to APS, and reverse as to AZP.

Pursuant to A.R.S. § 12-348, AZP is awarded its attorney's fees both on appeal and in the superior court, in an amount to be established pursuant to Rule 21(c), Arizona Rules of Civil Appellate Procedure.

JACOBSON, P.J., and GREER, J., concur.