**SUN CITY TAXPAYERS' ASSOCIATION**

v.

**CITIZENS UTILITIES COMPANY.**

Civ. No. 3:93–CV–364 (JAC).

United States District Court,
D. Connecticut.

Feb. 1, 1994.

---

**5.** *United States v. Valencia–Copete*, 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir.1980).

Jonathan D. Elliot and Elliot I. Miller, Kleban & Samor, P.C., Southport, CT, for plaintiff.

James F. Stapleton, Day, Berry & Howard, Stamford, CT, Joseph E. Mais and Anthony L. Marks, Brown & Bain, Phoenix, AZ, for defendant.

### RULING ON DEFENDANT'S MOTION TO DISMISS

JOSÉ A. CABRANES, Chief Judge:

This is an action by the Sun City Taxpayers' Association ("Association"), an Arizona not-for-profit corporation, claiming to represent residential real estate owners in Sun City, Arizona. The Association alleges that Citizens Utilities Company ("Utilities"), was involved in a scheme to submit false information to the Arizona Corporation Commission ("Arizona Commission"), Arizona's utility

rate-setting authority, in order to secure approval of higher-than-proper utility rates.

This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"). Pending before the court is the defendant's motion to dismiss.

### BACKGROUND

The Association alleges that on two or more occasions Utilities used the United States Postal Service, interstate telephone calls, telecopier transmissions and other interstate wire facilities in furtherance of a scheme to defraud, in violation of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud). According to the Association, Utilities' alleged actions constitute predicate acts of "racketeering activity" as defined by 18 U.S.C. § 1961(1)(B) and form a "pattern of racketeering activity" as defined by 18 U.S.C. § 1961(5).

The Association alleges that between 1968 and 1978, the defendant caused fraudulent statements to be entered on the accounting books of its subsidiaries, Sun City Water Company and Sun City Sewer Company (water and sewer service providers for Sun City), in order to procure from the Arizona Commission higher utility rates than it would otherwise have been entitled to secure. Complaint (filed Feb. 19, 1993) ("Complaint"), ¶ 14. The plaintiff seeks, *inter alia,* treble damages and costs and attorney's fees under 18 U.S.C. § 1964(c), based on the alleged violations of 18 U.S.C. § 1962(a), (b), and (c). Complaint, ¶¶ 30–32; p. 22.

The defendant has moved to dismiss the Complaint (1) pursuant to Fed.R.Civ.P. 9(b), for failure to plead fraud with particularity, and (2) pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. The defendant contends that even if the allegations in the Complaint were deemed to be pleaded with the requisite particularity, and even if all of the allegations are true, the plaintiff cannot maintain this action because: (1) the Association lacks standing, (2) the "Filed Rate Doctrine" bars the plaintiff's cause of action, and (3) the

284

Complaint fails to state a cognizable RICO claim.[1] Following the filing of a response to this motion by the Association and a reply memorandum by Utilities, the court heard oral argument on the defendant's motion at a hearing held on the record in open court. Accordingly, the defendant's motion is now ripe for consideration and decision by the court.

## DISCUSSION

### I.

 In deciding a motion to dismiss, a court must presume all factual allegations in the complaint to be true and must draw any reasonable inferences in favor of the non-moving party. *See* 2A Moore's Federal Practice ¶ 12.07 (2d ed. 1991); *See, e.g., Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Yoder v. Orthomolecular Nutrition Inst., Inc.,* 751 F.2d 555, 562 (2d Cir.1985). In an action arising under RICO, any supplemental facts provided in a RICO case statement are likewise taken as true. *McLaughlin v. Anderson,* 962 F.2d 187, 189 (2d Cir.1992). Dismissal is not warranted unless "it appears beyond all doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–102. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir.1978), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979). The question for this court to decide is "whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of the plaintiff[']s[ ] claims." *De La Cruz,* 582 F.2d at 48.

### A. *Standing*

 The first question is whether the plaintiff has standing to bring this action. It

is, of course, the general rule that a party must establish a personal stake in the action in order to invoke federal jurisdiction. *See, e.g., Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *United States v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 687, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254 (1973).

 Although an organization does have standing to sue in its own right to seek relief from injury to itself, *see Warth,* 422 U.S. at 511, 95 S.Ct. at 2211, organizations do not have standing to represent their vision of the public interest, their "interest in a problem" or "their own value preferences" absent some asserted injury to the organization or to its members. *Sierra Club v. Morton,* 405 U.S. 727, 736–41, 92 S.Ct. 1361, 1367–69, 31 L.Ed.2d 636 (1972); *SCRAP,* 412 U.S. at 683–87, 93 S.Ct. at 2413–16; *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 485–86 & n. 22, 102 S.Ct. 752, 765–66 n. 22, 70 L.Ed.2d 700 (1982); *see also Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 223 n. 13, 94 S.Ct. 2925, 2933 n. 13, 41 L.Ed.2d 706 (1974); *Sullivan v. Syracuse Housing Authority,* 962 F.2d 1101, 1107 (2d Cir.1992); *Matter of Appointment of Independent Counsel,* 766 F.2d 70, 73–74 (2d Cir.1985), *cert. denied,* 474 U.S. 1020, 106 S.Ct. 569, 88 L.Ed.2d 554 (1985) ("*Independent Counsel*").

In attempting to "secure relief from injury to itself the association may assert the rights of its members, *at least so long as the challenged infractions adversely affect its members' associational ties.*" *Warth,* 422 U.S. at 511, 95 S.Ct. at 2211 (emphasis added); *see also N.A.A.C.P. v. Alabama,* 357 U.S. 449, 458–60, 78 S.Ct. 1163, 1169–71, 2 L.Ed.2d 1488 (1958) (organization had standing to assert the rights of its members not to disclose their membership, because requiring members to assert their right not to disclose their membership nullified the right at the moment of assertion); *Joint Anti–Fascist*

---

1. Defendants's Memorandum In Support Of Motion To Dismiss Complaint (filed Apr. 19, 1993) ("Defendant's Memorandum") at 1–3.

*Refugee Committee v. McGrath*, 341 U.S. 123, 186–87, 71 S.Ct. 624, 655–56, 95 L.Ed. 817 (1951) (Jackson, J., concurring). In this case the Association has neither alleged an injury to itself nor alleged that its members' associational ties have been affected. *See, e.g.*, Certified Official Transcript of October 4, 1993 Hearing (filed Oct. 13, 1993) ("Transcript") at 46–47; RICO Case Statement (filed Feb. 19, 1993), ¶ 4. The Association does not claim that it paid the alleged higher utility rates. *Id.* Moreover, while the Association claims to be protecting the pecuniary interest of its members, it does not explain how the alleged overpayment of utility rates by its members affects the members' "associational" ties. *Id.*

Nevertheless, an organization that has not suffered an injury itself can sue as the representative of its members if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). But as the Supreme Court stated in *Warth* and *Hunt*, whether an organization has standing as the representative of its members depends substantially upon the type of relief sought:

> If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.

*Id.* at 343, 97 S.Ct. at 2441 (quoting *Warth*, 422 U.S. at 515, 95 S.Ct. at 2213).

■ The Association meets the first two requirements of the *Hunt* test. First, each of the Association's members has standing to bring this action in his or her own right because each member has allegedly suffered a "distinct and palpable injury," *Warth*, 422 U.S. at 501, 95 S.Ct. at 2206, as a result of the alleged "illegal conduct of the defendant," *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979), which could be redressed by a favorable court decision. *Independent Counsel*, 766 F.2d at 74 (*citing Valley Forge*, 454 U.S. at 472, 102 S.Ct. at 758). Second, the interests the Association seeks to protect are germane to the organization's purpose— one of the purposes of the Association is to investigate and determine the fairness and reasonableness of utility charges.[2]

■ However, the Association fails to meet the third part of the *Hunt* test because the relief requested requires that each member of the Association be a party to the suit. In *Warth*, the Supreme Court found that an organization did not have standing to represent its members' interest because the damages claimed were not common to the entire membership, nor shared in equal degree by them. Since each member's injuries were peculiar to that member, and "individualized proof" would be required to prove both the fact and extent of the injuries, each member would necessarily have to be a party to the suit. *Warth*, 422 U.S. at 515–16, 95 S.Ct. at 2213–14; *see also Hunt*, 432 U.S. at 344, 97 S.Ct. at 2441 (organization had standing to represent its members because the request for declaratory and injunctive relief did *not* require individualized proof). The alleged injuries suffered by the Association's members are peculiar to each member; individualized proof would be required both as to whether the member was injured and the extent of any such injury. The Association's members have lived in Sun City for varying lengths of time and, if they have suffered any injury, they presumably have suffered varying degrees of injury. In addition, their injuries would vary according to their use of the utility service. Even if the members injuries could be calculated by a simple formula, that alone would be insufficient to grant the organization standing. *Hunt*'s requirement of "individual participation" implies "something more than individual in-

---

2. Plaintiff's Memorandum Of Law In Opposition To Defendant's Motion To Dismiss (filed May 17, 1993) ("Plaintiff's Response") Exhibit A at 1 (the Association's articles of incorporation).

court testimony to establish the fact and extent of injury." *Telecommunications Research & Action Ctr. on Behalf of Checknoff v. Allnet Communication Services, Inc.*, 806 F.2d 1093, 1095 (D.C.Cir.1986) (Ruth Bader Ginsburg, J.) (*"Allnet"*) (An association lacked standing to pursue an action for damages on behalf of its members even though the extent of the injury to each individual could be easily calculated).

Furthermore, the Association is not seeking any kind of prospective relief, but only damages. Courts have consistently rejected assertions of representative standing on behalf of their members where the association has sought damages as opposed to injunctive or declaratory relief. *See, e.g., Warth*, 422 U.S. at 515–16, 95 S.Ct. at 2213–14; *United Union of Roofers, Waterproofers, and Allied Trades No. 40 v. Insurance Corp. of America*, 919 F.2d 1398, 1400 (9th Cir.1990); *Allnet*, 806 F.2d at 1095–97; *American Fed'n of R.R. Police, Inc. (AFRP) v. National R.R. Passenger Corp. (AMTRAK)*, 832 F.2d 14, 16 (2d Cir.1987); *Simer v. Rios*, 661 F.2d 655, 682 & n. 57 (7th Cir.1981), *cert. denied*, 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982); *United Steelworkers of America, AFL–CIO v. University of Alabama*, 599 F.2d 56, 59 (5th Cir.1979); *Cf. Hunt*, 432 U.S. at 344, 97 S.Ct. at 2441 (noting that the plaintiff requested only declaratory and injunctive relief).

The plaintiff draws the court's attention to *Middlewest Motor Freight Bureau v. United States*, 525 F.2d 681, 682–83 (8th Cir.1975), a pre-*Hunt* case, to support its contention that courts have found that organizations can have representative standing when seeking damages on behalf of their members. Plaintiff's Response at 39–40. Even if it could be argued that *Middlewest* is still good law in the Eighth Circuit after *Hunt*—a dubious proposition—it would not bind a court in our Circuit.[3] *Middlewest* is, in any event, distinguishable. In that case, the Eighth Circuit found strong "prudential considerations" for granting standing to an association that had litigated the merits of the case for over 10 years without a challenge to its standing. *Middlewest*, 525 F.2d at 683. In addition, denying standing would have prejudiced the individual members because they would have been barred by the statute of limitations from bringing their own claims. *Id.* Contrary to the plaintiff's contention in the instant case, Plaintiff's Response at 40 n. 11, the court finds that neither of these "prudential considerations" are present here. This action is new and has not been litigated for any length of time; the defendant has contested the plaintiff's standing at an early stage in the proceedings; and the plaintiff has not cited any statute of limitations that would bar the individual members from asserting these claims.

The Association's reliance on *Standardbred Owners Ass'n v. Roosevelt Raceway Associates, L.P.*, 985 F.2d 102 (2d Cir.1993), is similarly misplaced. In *Standardbred*, the plaintiffs consisted of the individual members of an association and the association to which they belonged; the association asserted its claims on the basis of injuries it had suffered and not as the representative of its individual members. In that case the Court of Appeals found that the plaintiffs had demonstrated that the asserted RICO violation was the proximate cause of the plaintiffs' injuries, thereby satisfying RICO's independent standing requirement. *Standardbred*, 985 F.2d at 104–05; *see Holmes v. Securities Investor Protection Corp.*, —— U.S. ——, ————, 112 S.Ct. 1311, 1316–19, 117 L.Ed.2d 532 (1992); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23–24 (2d Cir.1990). In the present case, the court is called upon to determine whether the plaintiff meets the general standing requirement of a distinct and palpable injury, not whether the plaintiff has met the independent standing requirement of RICO, 18 U.S.C. § 1964(c). *See Holmes*, —— U.S. at ————, 112 S.Ct. at 1316–18.

The court concludes, for the reasons stated above, that the plaintiff lacks standing and that this action must be dismissed.

---

**3.** *Cf.* Transcript at 44 (the plaintiff concedes absence of Second Circuit authority for its position).

## II.

Assuming for the argument only that the plaintiff is able to meet general standing and pleading requirements,[4] we turn to the defendant's argument that the action should be dismissed pursuant to Fed.R.Civ.Pro. 12(b)(6), for failure to state a claim upon which relief can be granted.

### A. *RICO Claim*

■ To invoke civil RICO remedies under 18 U.S.C. § 1964(c), the plaintiff must allege that he was "injured in his business or property by reason of a violation of section 1962."[5] Accordingly, the plaintiff must show (1) a violation of section 1962, (2) an injury to business or property and (3) that the RICO violation was the proximate cause of the plaintiff's injury. *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Hecht,* 897 F.2d at 23; *Holmes,* — U.S. at —— —, 112 S.Ct. at 1316–18; *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10, 14–15 (2d Cir.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990).

■ The defendant contends that the plaintiff has not (1) established a violation of section 1962, (2) alleged facts showing an injury to the plaintiff's business or property, or (3) shown any causal relationship between the alleged violation and the alleged injury. *See* Defendant's Memorandum at 17–30. The court agrees that the Association has not alleged facts sufficient to establish that it has suffered an injury to its business or property. As noted above with regard to standing, the plaintiff has not alleged that it either paid the alleged excessive rates or that it has suffered an injury to its business or property as a result of the alleged excessive rates. *See Sedima,* 473 U.S. at 496, 105 S.Ct. at 3285 (a party cannot recover under RICO unless it has suffered an injury to its business or property). Furthermore, as explained more fully below, even if the Association had paid the allegedly excessive rates, its civil RICO claim would still be barred by the "filed rate doctrine." Accordingly, the court need not reach the question of whether the plaintiff has alleged facts sufficient to establish a violation of section 1962[6] or whether the violation could have been the proximate cause of the plaintiff's injuries.

### B. *Filed Rate Doctrine*

Even if it could be argued that the plaintiff had general standing to bring this action, met the pleading requirements of Fed. R.Civ.P. 9(b), and stated a claim under RICO, the court would be required to dismiss this action because it is barred by the "filed rate doctrine." That doctrine automatically prevents the plaintiff from meeting the specific standing requirements of section 1964(c) because the plaintiff cannot be said to have suffered an injury to its business or property.

■ In *Keogh v. Chicago & Northwestern Ry. Co.*, 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922),[7] Justice Brandeis enunciated the filed rate doctrine, which prevents a ratepayer from challenging the rates approved by a legislatively created agency or utility rate-setting scheme. The doctrine "forbids a regulated entity [from charging] . . . rates for its services other than those properly filed with

---

4. In the circumstances presented, the court need not, and does not, address the question of whether the plaintiff, has met the requirements of Fed.R.Civ.P. 9(b) that allegations of fraud be pleaded with particularity, *see generally McLaughlin,* 962 F.2d at 191, although at first blush it would appear to have done so.

5. "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court...." 18 U.S.C. § 1964(c).

6. *See National Organization for Women, Inc. v. Scheidler,* — U.S. ——, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) (*"NOW v. Scheidler"*) (explaining that section 1962 does not require proof that either the predicate acts of racketeering or the racketeering enterprise were economically motivated).

7. The origins of the "filed rate doctrine" can be traced to *Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 440–41, 27 S.Ct. 350, 355–56, 51 L.Ed. 553 (1907) (denying a shipper's right to maintain a common law action against a common carrier for the exaction of alleged unreasonable rates, which were filed with the Interstate Commerce Commission). *Keogh* applied this concept to an action brought under a federal statute.

the appropriate federal regulatory authority." *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577, 101 S.Ct. 2925, 2930, 69 L.Ed.2d 856 (1981). A ratepayer can "claim no rate as a legal right that is other than the filed rate...." *Montana–Dakota Utilities Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246, 251, 71 S.Ct. 692, 695, 95 L.Ed. 912 (1951). Therefore, the filed rate doctrine prohibits a ratepayer from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue. *See Hall*, 453 U.S. at 577–79, 101 S.Ct. at 2930–31; *H.J. Inc. v. Northwestern Bell Tel. Co.*, 954 F.2d 485, 488 (8th Cir.1992) (*"H.J.Inc. II"*), *cert. denied*, —— U.S. ——, 112 S.Ct. 2306, 119 L.Ed.2d 228 (1992).

■ The purpose of the filed rate doctrine is to preserve the authority of the legislatively created agency to set reasonable and uniform rates and to insure that those rates are enforced, thereby preventing price discrimination. *See Hall*, 453 U.S. at 577–79, 101 S.Ct. at 2930–31 (allowing a state court to award breach of contract damages for rates never filed would undermine the congressional scheme of uniform rate regulation). "The duty to file rates with the commission ... and the obligation to charge only those rates, ... have always been considered essential to preventing price discrimination and stabilizing rates." *Maislin Ind., U.S. Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 126, 110 S.Ct. 2759, 2766, 111 L.Ed.2d 94 (1990). " 'The considerations underlying the doctrine ... are preservation of the agency's primary jurisdiction over reasonableness of rates and the need to insure that regulated companies charge only those rates of which the agency has been made cognizant.' " *Hall*, 453 U.S. at 577–78, 101 S.Ct. at 2930–31 (quoting *City of Cleveland, Ohio v. Federal Power Commission*, 525 F.2d 845, 854 (D.C.Cir.1976)).

Furthermore, the courts have recognized that judicial tribunals are not well suited to retroactive rate-setting in the face of a legislatively created rate-setting authority. *See Wegoland, Ltd. v. NYNEX Corp.*, 806 F.Supp. 1112, 1115 (S.D.N.Y.1992). In *Montana–Dakota*, the parties (two electrical utility companies) agreed to the rates that each utility company would pay the other for electrical power, which were then filed with and approved by the Federal Power Commission. The plaintiff sought damages measured by the difference between the filed rate and the rate that would have been established absent the alleged fraud in the setting of the rate. *Montana–Dakota*, 341 U.S. at 251–55, 71 S.Ct. at 695–97. The Supreme Court, though not explicitly referring to *Keogh* or the filed rate doctrine, went on to explain:

> [T]he problem is whether it is open to the courts to determine what the reasonable rates during the past should have been. The petitioner, in contending that they are so empowered ... regard[s] reasonableness as a justiciable legal right rather than a criterion for administrative application in determining a lawful rate.... It is not the disembodied "reasonableness" but that standard when embodied in a rate which the Commission accepts or determines that governs the rights of buyer and seller. A court may think a different level more reasonable. But the prescription of the statute is a standard for the Commission to apply and, independently of Commission action, creates no right which courts may enforce.
>
> Petitioner cannot separate what Congress has joined together. It cannot litigate in a judicial forum its general right to a reasonable rate, ignoring the qualification that it shall be made specific only by exercise of the Commission's judgment, in which there is some considerable element of discretion. It can claim no rate as a legal right that is other than the filed rate....

*Montana–Dakota*, 341 U.S. at 251, 71 S.Ct. at 695; *see also Taffet v. Southern Co.*, 967 F.2d 1483, 1489–90 (en banc) (11th Cir.1992) ("*Taffet II*"), *cert. denied*, —— U.S. ——, 113 S.Ct. 657, 121 L.Ed.2d 583 (1992); *Wegoland*, 806 F.Supp at 1114–15.

■ The filed rate doctrine has traditionally been applied in actions brought under the Sherman Antitrust Act, 15 U.S.C. §§ 1–7. *See, e.g., Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986); *Keogh*, 260 U.S. at 159, 43 S.Ct. at 48; *City of Kirkwood v.*

*Union Elec., Co.,* 671 F.2d 1173 (8th Cir. 1982) (Richard S. Arnold, J.), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 814, 74 L.Ed.2d 1013 (1983). However, the doctrine has also been applied to bar RICO claims. *See H.J.Inc. II,* 954 F.2d at 485–88 (filed rate doctrine barred customers' civil RICO action against telephone company for an alleged scheme to bribe members of the rate-setting commission in order to influence rate setting); *Taffet II,* 967 F.2d at 1485–86 (filed rate doctrine barred ratepayer civil RICO action against an electrical utility to recover excessive rates resulting from the utility's fraudulent misrepresentations to the rate-setting commission); *Wegoland,* 806 F.Supp. at 1112–13 (filed rate doctrine barred ratepayers' civil RICO action against telephone utility for excessive rates obtained through fraud of the regulatory commission); *Lifschultz Fast Freight, Inc. v. Consolidated Freightways Corp. of Delaware,* 805 F.Supp. 1277, 1296 (D.S.C.1992), *aff'd without opinion,* 998 F.2d 1009 (4th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 553, 126 L.Ed.2d 454 (1993) (filed rate doctrine barred the plaintiff's RICO claims). Although the seminal *Keogh* case involved a federal regulatory agency, the rationale behind the filed rate doctrine applies equally to state agencies. *See H.J.Inc. II,* 954 F.2d at 494; *Taffet II,* 967 F.2d at 1494; *Wegoland,* 806 F.Supp. at 1115.

This case presents the court with precisely the situation the filed rate doctrine was intended to avoid. The Arizona Constitution vests the Arizona Commission with "full power to ... prescribe ... just and reasonable rates and charges to be made and collected, by public service corporations within the State for service rendered therein...." *See* Ariz.Rev.Stat.Ann., Ariz. Const. art. 15 § 3; *see also Arizona Corp. Comm'n v. Woods,* 171 Ariz. 286, 292–94, 830 P.2d 807, 813–15 (1992) (explaining the extent of power to set rates vested in the Arizona Commission by the Arizona Constitution); *State v. Tucson Gas, Elec. Light & Power Co.,* 15 Ariz. 294, 302, 138 P. 781, 789 (1914) (describing the power given to the Arizona Commission as "sui generis"). Under section 2 of article 15 of the Arizona Constitution, "[a]ll corporations other than municipal [corporations] engaged in furnishing [public utility services]

... shall be deemed public service corporations." *See* Ariz.Rev.Stat.Ann., Ariz. Const. art. 15 § 2; *see also Mountain States Tel. and Tel. Co. v. Arizona Corp. Comm'n,* 132 Ariz. 109, 114, 644 P.2d 263, 268 (App.1982); *Cf. Arizona Public Serv. Co. v. Arizona Corp. Comm'n,* 155 Ariz. 263, 266–67, 746 P.2d 4, 7–8 (App.1987) *opinion approved in part and vacated in part,* 157 Ariz. 532, 760 P.2d 532 (1988) (en banc) (parent of a wholly-owned public service corporation was not itself a public service corporation within the jurisdiction of the Arizona Commission).

Arizona courts have interpreted section 3 of article 15 as giving the Arizona Commission full and exclusive power to set rates which cannot be interfered with by the courts, the legislature or the executive of the state government. *See Morris v. Arizona Corp. Comm'n,* 24 Ariz.App. 454, 457, 539 P.2d 928, 931 (1975); *Ethington v. Wright,* 66 Ariz. 382, 391–92, 189 P.2d 209, 218–19 (1948). The Arizona Commission has a "range of legislative discretion" in setting rates and as long as that discretion is not abused, the state courts cannot substitute their judgment for that of the commission as to what "is fair value or a just and reasonable rate." *Woods,* 171 Ariz. at 294, 830 P.2d at 815; *Simms v. Round Valley Light & Power Co.,* 80 Ariz. 145, 154, 294 P.2d 378, 387 (1956). In fact, a state trial court's review of the Arizona Commission's rate-making power is limited to whether its findings and conclusions are supported by substantial evidence and are not arbitrary or otherwise unlawful. *Simms,* 80 Ariz. at 154, 294 P.2d at 387; *Arizona Corp. Comm'n v. Citizens Utilities Co.,* 120 Ariz. 184, 187, 584 P.2d 1175, 1178 (App.1978).

■ In the instant case, the Arizona Commission approved the rates at issue; the Association is attacking the reasonableness of the rates established by the Arizona Commission, and asking the court to award damages in the amount by which the rates allegedly were excessive. Were the court to determine that the rates at issue in the instant case were improperly set, the court would necessarily have to second guess and alter the rates established by the Arizona Commission; any award of damages would in

effect reset the prior rates to a level the court deemed appropriate. Furthermore, any award of damages, unless enuring to the benefit of all past ratepayers, would result in the unjust price discrimination which the legislature wanted to avoid. *Cf. Taffet II*, 967 F.2d at 1490–95. It bears recalling that the Association's membership does not include all present or past ratepayers in Sun City. Transcript at 39–40.

■ Moreover, under the filed rate doctrine, the plaintiff cannot support a claim under section 1964(c) because it has not suffered an injury to its "business or property." As Justice Brandeis explained in *Keogh:*

> Section 7 of the Anti–Trust Act gives a right of action to one who has been "injured in his business or property." Injury implies violation of a legal right. The legal rights of shipper as against carrier in respect to a rate are measured by the published tariff. Unless and until suspended or set aside, this rate is made, for all purposes, the legal rate, as between carrier and shipper. The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier. And they are not affected by the tort of a third party. This stringent rule prevails, because otherwise the paramount purpose of Congress—prevention of unjust discrimination—might be defeated.

*Keogh,* 260 U.S. at 163, 43 S.Ct. at 49 (citations omitted); *see also Square D Co.,* 476 U.S. at 416–17, 106 S.Ct. at 1926–27 (quoting *Keogh* ). As Justice Brandeis suggested, a ratepayer cannot suffer an injury to his "business or property" under the Antitrust Act if he pays the filed rate, even if that rate is obtained through fraud. *Taffet II,* 967 F.2d at 1495.

Likewise, a plaintiff cannot suffer an injury to his business or property under RICO if he pays the filed rate. Section 1964(c) provides a civil remedy for any person who is "injured in his business or property by reason of a violation of section 1962" of RICO. 18 U.S.C. § 1964(c). In interpreting the meaning of section 1964(c), the Supreme Court has stated that it credits "the 91st Congress, which enacted RICO, with knowing the interpretation federal courts had given the words

earlier Congresses had used first in § 7 of the Sherman Act, and later in the Clayton Act's § 4." *Holmes,* —— U.S. at ——–——, 112 S.Ct. at 1317–18 (citation omitted) (interpreting section 1964(c) as incorporating the antitrust requirement of proximate cause). "It used the same words, and we can only assume it intended them to have the same meaning that courts had already given them." *Id.* (citations omitted).

Accordingly, the plaintiff cannot maintain a civil RICO action if he paid the filed rate. The Complaint does not allege, and the plaintiff nowhere else suggests, that Utilities ever charged anything other than the legal filed rate established by the Arizona Commission. Therefore, as *Keogh* and *Holmes* make clear, neither the Association nor its members have standing to bring this RICO claim because they have paid the legal rate approved by the Arizona Commission and consequently they have not been injured in their property or business.

■ The plaintiff relies on *County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1307–08 (2d Cir.1990) (*"LILCO"* ) for the proposition that the filed rate doctrine does not bar its claim. While our Court of Appeals clearly and unambiguously stated in *LILCO* that RICO is applicable to state regulated utilities, it did not comment on whether the filed rate doctrine would bar a civil RICO claim by a ratepayer or association of ratepayers. *Id.; see also H.J.Inc. II,* 954 F.2d at 491; *Wegoland,* 806 F.Supp. at 1122. If the filed rate doctrine does not shield utilities from all possible RICO actions, it surely bars civil recovery under RICO by ratepayers. As Justice Brandeis explained in *Keogh,* the filed rate doctrine bars a private party from bringing a civil action under the Antitrust Act, but it does not bar *the Government* from bringing an action against the defendant. *Keogh,* 260 U.S. at 162, 43 S.Ct. at 49. As a result, the filed rate doctrine does not completely immunize utilities from the anti-trust laws; they remain subject to actions brought by the Government for criminal sanctions and other equitable relief. *Square D Co.,* 476 U.S. at 422, 106 S.Ct. at 1929. Similarly, the filed rate doctrine would not, as the plaintiff

suggests, immunize utilities completely from RICO—they would remain subject to suits brought by the Government under RICO because the filed rate doctrine bars only a ratepayer's private civil RICO remedy.

The plaintiff also relies on *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), for the proposition that the filed rate doctrine does not bar the plaintiff's RICO claim. *See* Plaintiff's Response at 17–20. However, the plaintiff's reliance on the Supreme Court's decision in *Northwestern Bell* is misplaced. In that case, the Court reversed the decision in *H.J. Inc. v. Northwestern Bell Tel. Co.*, 829 F.2d 648 (8th Cir.1987) ("*H.J.Inc. I*"), which had affirmed the district court's dismissal, *see* 648 F.Supp. 419 (D.Minn.1986), of a ratepayers' civil RICO claim against the utility due to a failure to plead sufficiently a pattern of racketeering; a failure to allege an "enterprise" distinct from the "racketeer"; and the filed rate doctrine. The Court of Appeals affirmed solely on the "pattern of racketeering" question; it did not address the other two grounds. *H.J.Inc. I*, 829 F.2d at 650; *see Northwestern Bell*, 492 U.S. at 234 & n. 1, 109 S.Ct. at 2897 & n. 1. The Supreme Court in *Northwestern Bell* found that the plaintiffs had adequately pled a pattern of racketeering, but the Court (like the Court of Appeals before it) did not address the issue of whether the filed rate doctrine barred the plaintiffs' RICO claims.

 The Association also argues that the cases that have barred RICO claims under the filed rate doctrine are distinguishable. *See* Plaintiff's Response at 25. The plaintiff implies that there is an exception to the filed rate doctrine where there is an allegation that the defendant committed fraud on the rate-setting agency. *See id.* at 17, 20. The Association argues that the filed rate doctrine should not apply here because, in obtaining approval of the utility rates, Utilities defrauded the Arizona Commission. The Supreme Court has not decided whether there is a fraud exception to the filed rate doctrine. *See Hall*, 453 U.S. at 583 & n. 13, 101 S.Ct. at 2933 & n. 13 (the Court reserved "for anoth-

er day the question whether the filed rate doctrine applies in the face of fraudulent conduct"). However, other courts have refused to recognize a fraud exception to the filed rate doctrine. As the Court of Appeals for the Eight Circuit stated in a leading case, "the underlying conduct does not control whether the filed rate doctrine applies. Rather, the focus for determining whether the filed rate doctrine applies is the impact the court's decision will have on agency procedures and rate determinations." *H.J.Inc. II*, 954 F.2d at 489 & n. 4; *accord, Taffet II*, 967 F.2d at 1494–95 (Court rejects proposition that fraud is exception to the filed rate doctrine); *Wegoland*, 806 F.Supp. at 1118 (same). In light of the Supreme Court's reaffirmation of the filed rate doctrine in *Square D Co.*,[8] and the persuasive authority of these decisions of the lower federal courts, this court declines the plaintiff's invitation to find a fraud exception to the filed rate doctrine.

### CONCLUSION

Upon a review of the record, including the oral arguments of counsel, and for the reasons stated above, the defendant's motion to dismiss the Complaint (Doc. # 16) is hereby GRANTED.

It is so ordered.

---

**8.** *Square D Co.*, 476 U.S. at 424, 106 S.Ct. at 1930 (if the *Keogh* rule is to be overruled, "it

must come from Congress, rather than from this Court").